UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOHN CARMACK,

        Plaintiff,

    v.                                           Case No. 22-CV-695

SNAP-ON INCORPORATED,

        Defendant.

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

**SECTION:**                                                                                                                      **PAGE:**

I.  INTRODUCTION ........................................................................................................... 1

II. CASE SUMMARY ......................................................................................................... 2

    A.   The Security Incident. ......................................................................................... 2

    B.   Procedural Posture. ............................................................................................. 2

    C.   History of Negotiations. ...................................................................................... 3

III. SUMMARY OF SETTLEMENT ................................................................................... 4

    A.   Settlement Class. ................................................................................................. 4

    B.   Settlement Benefits. ............................................................................................ 4

    C.   The Notice and Claims Process. ......................................................................... 7

        1.   Notice ...................................................................................................... 7

        2.   Claims ..................................................................................................... 8

        3.   Exclusions .............................................................................................. 9

        4.   Objections .............................................................................................. 9

    D.   Attorneys' Fees, Costs, Expenses, and Service Award. .................................... 10

    E.   Release. ............................................................................................................. 11

IV. ARGUMENT ................................................................................................................ 11

    A.   Legal Standard................................................................................................... 11

    B.   The Settlement Satisfies Seventh Circuit Factors ............................................ 14

        1.   The Strength of Plaintiff's Case Is Well-Balanced Against the Amount Offered in the Settlement and the Complexity, Length, and Expense of Further Litigation Favors Settlement Now ....................................................................................... 15

        2.   Thus Far, There Has Been No Opposition to the Settlement and the Reaction of the Members of the Class to the Settlement Has Been Positive .............................. 16

3.  The Opinion of Competent Counsel Is That the Settlement Is Fair, Reasonable, and Adequate, and Should Be Approved ............................................................... 17

4.  The Stage of the Proceedings and the Amount of Discovery Completed Favors Settlement Now ............................................................................................ 17

C.  The Settlement Is Fair, Reasonable, and Adequate Under Rule 23(e)(2) ......................... 17

1.  **The Costs, Risks, and Delay of Trial and Appeal** ................................................. 19

2.  The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class Member Claims ................................... 20

3.  The Terms of Any Proposed Fee Award and Costs, Including Timing of Payment ............................................................................................................ 21

4.  The Presence of Any Agreements Between the Parties Separate from the Settlement Agreement ....................................................................................... 21

V.  CERTIFICATION OF THE SETTLEMENT CLASS ......................................................... 21

A.  The Requirements Under Fed. R. Civ. P. 23(a) Are Satisfied ........................................ 22

1.  The Settlement Class Is So Numerous That Joinder of Individual Members Is Impracticable ...................................................................................................... 22

2.  There Are Questions of Law and Fact Common to the Settlement Class ............... 22

3.  Plaintiff's Claims Are Typical of the Claims of the Settlement Class ...................... 23

4.  The Interests of Plaintiff and Proposed Settlement Class Counsel Are Aligned with the Interests of the Settlement Class ................................................................... 24

B.  The Requirements Under Fed. R. Civ. P. 23(b)(3) Are Satisfied ..................................... 25

VI. APPOINTMENT OF SETTLEMENT CLASS REPRESENTATIVE AND SETTLEMENT CLASS COUNSEL ............................................................................................................. 26

VII.    THE NOTICE PROGRAM SATISFIES ALL APPLICABLE REQUIREMENTS ........ 26

VIII.   CONCLUSION ................................................................................................................... 28

**Cases**

*Amchem Prods. v. Windsor*,
 521 U.S. 591 (1997) ............................................................................................ *passim*
*Armstrong v. Bd. of Sch. Dirs.*,
 616 F.2d 305 (7th Cir. 1980) ................................................................................ 13, 18
*Baum v. Mayo Clinic Ambul.*,
 No. 20-cv-409-wmc, 2022 U.S. Dist. LEXIS 19509 (W.D. Wis. Feb. 3, 2022) ............... 12
*Butler v. Sears, Roebuck & Co.*,
 727 F.3d 796 (7th Cir. 2013) ................................................................................ 23
*Carson v. Am. Brands*,
 Inc., 450 U.S. 79 (1981) ........................................................................................ 13
*Charron v. Wiener*,
 731 F.3d 241 (2d Cir. 2013) .................................................................................. 12
*Chesemore v. All. Holdings, Inc.*,
 No. 09-cv-413-WMC, 2014 WL 12730484 (W.D. Wis. Apr. 9, 2014) ........................ 12, 13
*Chicago Teachers Union, Local No. 1 v. Board of Educ. Of City of Chicago*,
 797 F.3d 426 (7th Cir. 2015) ................................................................................ 25
*Class Plaintiffs v. City of Seattle*,
 955 F.2d 1268 (9th Cir. 1992) .............................................................................. 18
*De La. Fuente v. Stokely-Van Camp, Inc.*,
 713 F.2d 225 (7th Cir. 1983) ................................................................................ 24
*Donovan v. Fitzsimmons*,
 778 F.2d 298 (7th Cir. 1985) ................................................................................ 12, 15
*EEOC v. Hiram Walker & Sons, Inc.*,
 768 F.2d 884 (7th Cir. 1985) ................................................................................ 13, 14
*Eisen v. Carlisle & Jacquelin*,
 417 U.S. 156 (1974) ............................................................................................ 28
*Felzen v. Andreas*,
 134 F.3d 873 (7th Cir. 1998) ................................................................................ 13
*G.F. v. Contra Costa Cnty.*,
 No. 13-cv-03667, 2015 WL 4606078 (N.D. Cal. July 30, 2015) ................................ 19
*Garner Props. & Mgmt., L.L.C. v. City of Inkster*,
 333 F.R.D. 614 (E.D. Mich. Jan. 17, 2020) ............................................................ 11
*Gautreaux v. Pierce*,
 690 F.2d 616 (7th Cir. 1982) ................................................................................ 12
*General Elec. Capital Corp. v. Lease Resolution Corp.*,
 128 F.3d 1074 (7th Cir. 1997) .............................................................................. 16
*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
 270 F.R.D. 330 (N.D. Ill. 2010) ............................................................................ 13, 16
*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
 55 F.3d 768 (3d Cir. 1995) ................................................................................... 21
*In re Holocaust Victim Assets Litig.*,
 105 F. Supp. 2d 139 (E.D.N.Y. 2000) ................................................................... 18
*In re Lorazepam & Clorazepate Antitrust Litig.*,
 205 F.R.D. 369 (D.D.C. 2002) .............................................................................. 18
*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
 163 F.R.D. 200 (S.D.N.Y. 1995) ........................................................................... 21, 22
*In re Tiktok, Inc., Consumer Priv. Litig.*,
 565 F. Supp. 3d 1076 (N.D. Ill. 2021) ................................................................... 11

*In re Tiktok, Inc., Consumer Priv. Litig.*,
No. MDL No. 2948, 2022 U.S. Dist. LEXIS 134177 ..................................................... 14
*Irish v. BNSF Ry. Co.*,
No. 08-CV-469-SLC, 2009 WL 276519 (W.D. Wis. Feb. 4, 2009) .................................. 22
*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ........................................................................................ *passim*
Jones v. Cruisin' Chubbys Gentlemen's Club, *No.*
17- cv-125-JDP, 2018 WL 11236460 ................................................................................. 13
*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Tr. Co.*
of Chicago, 834 F.2d 677 (7th Cir. 1987) ......................................................................... 18
*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950) ............................................................................................................ 27
*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) ............................................................................................. 25
*Nat'l Cas. Co. v. White Mts. Reinsurance Co. of Am.*,
735 F.3d 549 (7th Cir. 2013) ............................................................................................. 12
*Rosario v. Livaditis*,
963 F.2d 1013 (7th Cir. 1992) ........................................................................................... 23
*Smith v. Volkswagen Grp. of Am., Inc.*,
No. 13-CV-0370-MJR-PMF, 2014 U.S. Dist. LEXIS 192738 (S.D. Ill. May 27, 2014) .............. 11, 12
*Susman v. Lincoln American Corp.*,
561 F.2d 86 (7th Cir. 1977) ............................................................................................... 24
*Towers v. City of Chicago*,
173 F.3d 619 (7th Cir. 1999) ............................................................................................. 26
*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ............................................................................................................ 23
*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) ............................................................................................. 14

## Rules

Fed. R. Civ. P. 23 ................................................................................................................... 14
Fed. R. Civ. P. 23(a) .............................................................................................................. 22
Fed. R. Civ. P. 23(a)(2) .......................................................................................................... 22
Fed. R. Civ. P. 23(a)(3) .......................................................................................................... 24
Fed. R. Civ. P. 23(b)(3) .................................................................................................... 22, 25
Fed. R. Civ. P. 23(c)(1)(B) ..................................................................................................... 26
Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................................... 27
Fed. R. Civ. P. 23(e) ...................................................................................................... *passim*
Fed. R. Civ. P. 23(e)(1) .......................................................................................................... 26
Fed. R. Civ. P. 23(e)(1)(B) ..................................................................................................... 17
Fed. R. Civ. P. 23(e)(2) ................................................................................................... *passim*
Fed. R. Civ. P. 23(e)(2)(A), (B) ............................................................................................. 18
Fed. R. Civ. P. 23(e)(2)(A)-(D) ............................................................................................. 14
Fed. R. Civ. P. 23(e)(2)(C)(i) ................................................................................................. 19
Fed. R. Civ. P. 23(g) .............................................................................................................. 26
Fed. R. Civ. P. 23(g)(1)(A) ..................................................................................................... 26

**Other**

*Moore's Federal Practice,*
  23.165[3] (3d ed. 2005) ..................................................................................... 13
Herbert B. Newberg & Alba Conte,
  *Newberg on Class Actions* §§ 11.22 et seq. (5th ed. 2011) ............................................. 12

Plaintiff John Carmack ("Plaintiff"), individually and on behalf of all others similarly situated, submits this Memorandum in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement.

## I.  INTRODUCTION

This case relates to a Security Incident in which cybercriminals caused disruption to Defendant Snap-on Incorporated's ("Defendant" or "Snap-on," and together with Plaintiff, the "Parties") computer systems in March 2022 (the "Security Incident" or "Incident"), which resulted in the alleged access and exfiltration of personally identifiable information, including names, Social Security numbers, dates of birth, and employee identification numbers (the "Personal Information") of Snap-on's current and former associates and franchisees, including Plaintiff. *See Class Action Complaint* ("Complaint" or "*Comp.*"), ¶¶ 2, 3. Snap-on notified Plaintiff and the Settlement Class about the Incident on or around April 7, 2022. *See id.* Plaintiff subsequently filed the instant lawsuit. Plaintiff alleged that Snap-on failed to take and implement adequate measures and safeguards to ensure that Personal Information was safeguarded. *See id.* ¶ 24. Snap-on denies all liability.

After extensive arm's length negotiations with the assistance of an independent third-party mediator, the Parties have reached a settlement that is fair, reasonable, and adequate. The Settlement Agreement (also referred to herein as "S.A."), which is attached hereto as **Exhibit 1**, provides for monetary relief to be paid by Snap-on to eligible claimants of a Settlement Class[1] that includes 42,801 persons whose Personal Information may have been accessed as a result of the Security Incident and who were sent written notice thereof. The monetary relief provides for reimbursements of lost time and unreimbursed out-of-pocket losses incurred as a result of the Security Incident up to $750 and $2,500, respectively. In its initial notice of the Security Incident sent to Class Members

---

[1] Unless otherwise indicated, capitalized terms herein shall have the meaning as set forth in the Settlement Agreement.

on or around April 7, 2022, Snap-on offered all Settlement Class Members (2) years of free, three-bureau (3B) credit monitoring from IDX, with at least $1 million in identity theft protection services. The Settlement further provides Settlement Class Members with an additional year, for a total of three years of credit monitoring provided to Settlement Class Members, measured from April 2022. Settlement Class Members will not be required to file a formal claim to obtain the additional year of IDX services, and will merely need to enroll and activate the services. Finally, Snap-on has agreed to complete a series of ongoing data security enhancements through the end of the year 2024. Plaintiff strongly believes the Settlement is fair, reasonable, and adequate for the Settlement Class. *See* Declaration of Nicholas A. Migliaccio (the "Migliaccio Decl."), ¶¶ 55-56, attached hereto as **Exhibit 2**.

Accordingly, for the reasons set forth herein, Plaintiff respectfully requests that the Court preliminarily approve his Unopposed Motion for Preliminary Approval of Class Action Settlement and direct notice be sent to the Settlement Class.

## II.   CASE SUMMARY

Snap-on is a global automotive tools manufacturer headquartered in Wisconsin. Comp. ¶ 4, 17; Comp., ¶ 17. As part of its business, Snap-on gathered the Personal Information of its associates and franchisees, including Plaintiff and the Settlement Class. *See id.* ¶ 18. Snap-on is headquartered in Wisconsin, with its principal place of business located in Kenosha. Comp., ¶ 17.

### A.   The Security Incident.

Plaintiff alleges the Incident occurred in March 2022 when cybercriminals accessed Snap-on's network. *See Comp.*, ¶ 2, footnote 1; Migliaccio Decl., ¶ 8. The data accessed in the Security Incident included current and former associates' and franchisees' first and last names, Social Security numbers, dates of birth, and employee identification numbers. *See id.*

### B.   Procedural Posture.

As a result of the Security Incident, Plaintiff filed his Complaint on June 15, 2022, alleging causes of action for: (1) Negligence; (2) Breach of Implied Contract; (3) Unjust Enrichment/Quasi-Contract; (4) Breach of Fiduciary Duty; (5) Violations of Wisconsin's Notice of Unauthorized Acquisition of Personal Information; (6) Violations of Wisconsin's Deceptive Trade Practices Act; (7) Violations of the Colorado Consumer Protection Act; and (8) Declaratory/Injunctive Relief (the "Action"). *See Comp.*, ¶¶ 63-132; Migliaccio Decl., ¶ 12.

On October 10, 2022, the Parties participated in a mediation and agreed to settle this matter on a class-wide basis. *See* Migliaccio Decl., ¶ 13. On October 28, 2022, the Parties filed a Stipulated Motion to Stay Case. **(Doc. 16)** The Parties informed the Court that they reached a settlement at mediation and were in the process of preparing the settlement documentation, requesting that all remaining deadlines be stayed, and stating that Plaintiff was going to file the instant motion on or before December 9, 2022. *See id.* The Court entered an Order staying the case and ordering that the instant motion be filed on or before December 9, 2022. **(Doc. 17)** Upon agreement, the Parties extended the stipulated stay to January 20, 2023, and now file this Motion.

### C.    History of Negotiations.

After the Complaint was filed, and before any responsive pleading was filed by Defendant, the Parties began discussing the potential for early resolution of the matter. *See* Migliaccio Decl., ¶ 14. The Parties agreed to mediate the matter with Bruce Friedman, a prominent mediator with significant experience in mediating data breach and privacy cases. *See id.* ¶ 15. Counsel for Plaintiff brought extensive experience in data breach class actions to the table, which, along with their internal investigation and the informal discovery produced by Snap-on, which included information about the scope of the data breach and the class size, allowed Class Counsel to fully evaluate the strengths and weaknesses of Plaintiff's case and to conduct informed settlement negotiations. *See id.* ¶ 16. The mediation took place on October 10, 2022. *See id.* ¶ 17. After several rounds of negotiation

through the mediator, the Parties reached an agreement in principle on all material terms of the class settlement. *See id.* In the weeks following the execution of a term sheet, the Parties diligently negotiated final terms and drafted and finalized the Settlement Agreement, along with the accompanying notice forms, a claim form, and other exhibits. *See id.* ¶ 18. The Settlement Agreement and exhibits were finalized by the Parties on January 20, 2023. *See id.*

Despite the grounds that exist for each of Plaintiff's claims, which Snap-on denies, none are certain to resolve in Plaintiff's favor on the merits. Further litigation would subject Plaintiff to numerous risks, including the risk that he and the other Settlement Class Members receive no recovery at all. The Settlement provides significant relief to Settlement Class Members, and Plaintiff strongly believe that the Settlement is favorable for the Settlement Class and is fair, reasonable, adequate, and worthy of preliminary approval. *See id.* ¶¶ 55-56.

## III.    SUMMARY OF SETTLEMENT

### A.    Settlement Class.

The Settlement Class includes "all individuals whose personal information was compromised in the Security Incident that is the subject of the data security incident notice that Snap-on sent to the Settlement Class Representative and others in substantially the same form on or after April 7, 2022." S.A., ¶ 27. The Settlement Class specifically excludes: (i) Snap-on or any related entities, and their officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) any members of the judiciary who are or have presided over the instant Action and members of their families and staffs; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Security Incident or who pleads *nolo contendere* to any such charge. *Id.*

### B.    Settlement Benefits.

The Settlement negotiated on behalf of the Class provides for numerous separate forms of relief:

*First*, Snap-on will provide direct monetary relief to Settlement Class Members, capped at $400,000 in the aggregate, for reimbursement of expenses incurred as a result of the Security Incident. *See* S.A., ¶¶ 36-37; Migliaccio Decl., ¶ 24. The payments available to Settlement Class Members are divided into two separate categories. *See* S.A., ¶ 36; Migliaccio Decl., ¶ 25. The first category is to provide expense reimbursement for Out-of-Pocket Expenses and/or lost time responding to the Incident for up to $750 per Settlement Class Member. *See* S.A. *id.*; Migliaccio Decl., *id.* "Out-of-Pocket Expenses" are defined in the Settlement Agreement as unreimbursed costs or expenditures incurred by a Settlement Class Member that are fairly traceable to the Security Incident that may include any of the following: (1) unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or fraud, falsified tax returns, or other possible misuse of a Settlement Class Member's personal information; (2) costs incurred on or after March 3, 2022 associated with accessing or freezing / unfreezing credit reports with any credit reporting agency; and (3) other miscellaneous expenses incurred related to any out-of-pocket expenses such as notary, fax, postage, copying, mileage, bank fees, cell phone charges (if charged by the minute), data charges (if charged based on the amount of data used), long-distance telephone charges or local travel expenses such as gasoline or rideshare fees. *See* S.A., ¶ 18; Migliaccio Decl., *id.* Settlement Class Members may submit a claim for Out-of-Pocket Expenses by submitting a claim under penalty of perjury, with accompanying documentation, verifying Out-of-Pocket Expenses as a result of the Snap-on Incident. *See* S.A., ¶ 36; Migliaccio Decl., *id.* For a lost time reimbursement, Settlement Class Members are to be reimbursed at their actual hourly rate, with a minimum of $15 per hour and up to a maximum of $25 per hour. *See* S.A., *id.*; Migliaccio Decl., ¶ 26. Settlement Class Members

5

may submit claims for lost time with a simple attestation under penalty of perjury that they spent the claimed time addressing issues raised by the Incident and attesting to their hourly rate. *See* S.A., *id.*

The second category of payments is reimbursement for each Settlement Class Member who has suffered an instance of identity theft or fraud and who submits a claim under penalty of perjury, with accompanying documentation, verifying documented losses resulting from the Security Incident. *See* S.A., *id.*; Migliaccio Decl., ¶¶ 24-25.

*Second*, in addition to the two years of free, three-bureau credit monitoring through IDX that Snap-on offered all Settlement Class Members in its initial notice of the Security Incident sent to Class Members on or around April 7, 2022, Snap-on will automatically offer an additional year of free credit monitoring through IDX, for a total of three years of credit monitoring with at least $1 million in identity theft protection services and assistance in implementing further protections, including freezing and unfreezing credit. *See* S.A., ¶ 39; Migliaccio Decl., ¶ 24. Settlement Class Members will not be required to file a formal claim to obtain the additional benefit. *See* S.A., *id.*; Migliaccio Decl., ¶27. Settlement Class Members who previously activated credit monitoring services when Snap-on offered them will have their services automatically extended for an extra year, unless they decline the extension of such services by visiting the Settlement Website. Settlement Class Members who did not previously activate the credit monitoring services Snap-on offered to them will be able to do so with the activation code provided with the Class Notice. Settlement Class Members will not be required to file a formal claim to obtain this benefit but rather will merely need to enroll and activate the service. *See* S.A., *id.*; Migliaccio Decl., *id.* Snap-on will pay for the additional year of credit monitoring services separate and apart from other settlement benefits. *See* S.A., *id.*; Migliaccio Decl., ¶ 24.

*Lastly*, Snap-on will maintain data security and business practice enhancements that were implemented after the Security Incident and verified in the Settlement Agreement to help better

protect Plaintiff's and Settlement Class Members' Private Information in the future. Snap-on will continue to implement such practices through December 31, 2024. *See* S.A., ¶ 40; Migliaccio Decl., *id.* These improvements are designed to better protect Plaintiff's and Settlement Class Members' Personal Information in the future. Costs associated with maintaining the data security enhancements will be paid by Snap-on separate and apart from other Settlement benefits. *See* S.A., *id.*; Migliaccio Decl., *id.*

The maximum amount payable by Snap-on to the Settlement Class for the claims made for Out-of-Pocket Losses and lost time incurred by Settlement Class Members as a result of the Data Incident is $400,000. *See* S.A., ¶ 37; Migliaccio Decl., ¶ 28. If the aggregate claimed amount exceeds $400,000, the value of the payments to Settlement Class Members will be reduced on a *pro rata* basis, such that the aggregate value of all payments for these categories does not exceed $400,000. *See* S.A., *id.*; Migliaccio Decl., *id.*

C.     **The Notice and Claims Process.**

1.     **Notice**

The Parties have selected Angeion Group ("Angeion") as the Settlement Administrator to provide notice of the settlement to the Settlement Class and otherwise administer the settlement, subject to the approval of the Court. *See* S.A., ¶ 25; Migliaccio Decl., ¶ 19.  Snap-on has agreed to pay for the cost of providing notice and the Costs of Claims Administration separate and apart from the settlement payments available to the Settlement Class Members. *See* S.A., ¶ 41; Migliaccio Decl., ¶ 32. This is another substantial benefit available to the Settlement Class.

The Summary and Long Form Notices and Claim Form negotiated by the Parties are clear and concise and inform Settlement Class Members of their rights and options under the Settlement, including detailed instructions on how to make a claim, object to the Settlement, or opt-out of the Settlement. *See* S.A., Exs. A-C; Migliaccio Decl., ¶ 57. The current and agreed upon Notice program

calls for direct and individual Notice to be provided to Settlement Class Members via first-class mail, with return mail costs paid, to the postal addresses that Snap-on has in its possession. *See* S.A., ¶ 57; Migliaccio Decl., ¶ 34. For those whose notice is returned as undeliverable, email notice will be sent if Snap-on has a valid email address for that Settlement Class Member. *See* S.A., *id.*; Migliaccio Decl., *id.* Notice is to be substantially completed no later than thirty (30) days after entry of the Preliminary Approval Order. *See* S.A., *id.*; Migliaccio Decl., *id.*

The Settlement Administrator will establish a dedicated Settlement Website and will maintain and update the website throughout the claims period with the forms of Long Notice and Summary Notice, any motion seeking Final Approval of this Agreement, any motion for an award of Attorneys' Fees and Expenses and Service Award, the Preliminary Approval Order, the Claim Form, the Complaint, and such other documents as Class Counsel and Snap-on agree to post or that the Court orders posted on the Website. *See* S.A., ¶ 54; Migliaccio Decl., ¶ 35. Settlement Class Members will be able to submit Claim Forms through the Settlement Website and to download Claim Forms to submit them by mail. *See* S.A., *id.*; Migliaccio Decl., *id.* The Settlement Administrator will also make a toll-free help line available to provide Settlement Class Members with additional information about the Settlement. *See* S.A., *id.*; Migliaccio Decl., *id.*

### 2.    Claims

The timing of the claims process is structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting their claim, and decide if they would like to opt-out or object. Class Members will have ninety days after the date on which the Notice Program ends—or the Notice Deadline[2]—to submit their Claim Form to the Settlement Administrator, either by mail or online, thereby providing

---

[2] The "Notice Deadline" is the date that is thirty days after entry of the Preliminary Approval Order. *See* S.A. ¶ 14; Migliaccio Decl., ¶ 34.

Settlement Class Members ample time to decide whether to make a claim for reimbursement of monetary losses and/or free credit monitoring services. *See* S.A., ¶ 2; Migliaccio Decl., ¶ 41. The Settlement Administrator has authority to assess whether the claim made is valid. *See* S.A., ¶ 38.

### 3. Exclusions

Any Class Member who wishes to opt-out of the Settlement must send an individually signed and timely submitted written notice of exclusion postmarked no later than forty-five (45) days after the Notice Deadline (defined in the S.A. as the "Opt-Out Deadline") to the Settlement Administrator. *See* S.A., ¶ 58; Migliaccio Decl., ¶ 43. The notice of exclusion must state the individual's name and address; a statement that he or she wants to be excluded from the Settlement; and the individual's signature. *See* S.A., *id.*; Migliaccio Decl., ¶ 44.

### 4. Objections

Similarly, Settlement Class Members who wish to object to the terms of the Settlement Agreement may submit a written notice of objection to be postmarked no later than forty-five (45) days after the Notice Deadline (the "Objection Deadline"). *See* S.A., ¶ 59; Migliaccio Decl., ¶ 46. To be timely, written notice of an objection in the appropriate form must be filed with the Clerk of the Court (and contain the case name and docket number) as set forth in the S.A. and be mailed first class postage prepaid to Class Counsel and Snap-on's counsel and filed or postmarked by no later than the Objection Deadline, as specified in the Notice. *See* S.A., *id.*; Migliaccio Decl., *id.*

Such notice shall state:

    a.   the case name and number of the Action;

    b.   the objector's full name, address, email address, and telephone number;

    c.   an explanation of the basis upon which the objector claims to be a Settlement Class Member;

    d.   all grounds for the objection, accompanied by any legal support for the objection;

     e.   the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement, the fee application, or the application for Service Award;

     f.   the identity of all counsel representing the objector who will appear at the Fairness Hearing;

     g.   any and all agreements that relate to the objection or the process of objecting, whether written or verbal, between objector or objector's counsel and any other person or entity;

     h.   a list of any persons who will be called to testify at the Fairness Hearing in support of the objection;

     i.   a statement confirming whether the objector intends to personally appear and/or testify at the Fairness Hearing; and

     j.   the objector's signature on the written objection (an attorney's signature is not sufficient)

S.A., *id.*; Migliaccio Decl., *id.*

Any Settlement Class Member who fails to comply with the requirements for opting out and/or objecting will waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement and will be bound by all the terms of the Settlement Agreement and by all proceedings, orders, and judgments in the Action. *See* S.A., ¶¶ 58-59; Migliaccio Decl., *id.*

     **D.**     **Attorneys' Fees, Costs, Expenses, and Service Award.**

Consistent with best practices, the Parties did not discuss payment of attorneys' fees, costs, expenses, and service award until after the substantive terms of the settlement had been agreed upon, other than that Snap-on would not object to a request for reasonable attorneys' fees, costs, expenses, and service award as may be ordered by the Court. *See* S.A. Migliaccio Decl. ¶ 49.

Plaintiff will seek, and Snap-on will not object to, an award of reasonable attorneys' fees to Plaintiff's counsel not to exceed $225,000, subject to Court approval. *See* S.A., ¶ 76; Migliaccio Decl., ¶ 50. Snap-on will also pay Plaintiff a service award in the amount of $3,000 for his services

rendered on behalf of the Settlement Class, subject to Court approval. *See* S.A., ¶ 74; Migliaccio Decl., *id.*

### E. Release.

The release in this case is tailored to the claims or causes of action based on, relating to, concerning, arising out of, or activities stemming from the Security Incident. *See* Migliaccio Decl., ¶ 29. Settlement Class Members who do not exclude themselves from the Settlement Agreement will release claims against Snap-on relating to the Security Incident. *See* S.A. ¶¶ 70-73; Migliaccio Decl., ¶ 30.

## IV. ARGUMENT

### A. Legal Standard

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). A class action may not be settled however without notice of the proposed settlement to all settlement class members and the approval of the court. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620–21 (1997) (citing Fed. R. Civ. P. 23(e)). Before granting final approval of a class action settlement, the Court must follow a "well-established three-step process." *Smith v. Volkswagen Grp. of Am., Inc.*, No. 13-CV-0370-MJR-PMF, 2014 U.S. Dist. LEXIS 192738, at *4 (S.D. Ill. May 27, 2014): First, the Court must preliminarily approve the proposed settlement. Second, class members must be given notice of the proposed settlement. *Id.* And finally, a hearing must be held, after which the Court will decide whether the proposed settlement is fair, reasonable, adequate, and consistent with the public interest. *Id.* This case is before the Court at the first, or preliminary approval, stage.

While courts have applied different standards at the preliminary approval stage, "it is clear the bar is lower for preliminary approval than it is for final approval." *Garner Props. & Mgmt., L.L.C. v. City of Inkster, 33*3 F.R.D. 614, 621 (E.D. Mich. Jan. 17, 2020); *see also In re Tiktok, Inc., Consumer*

*Priv. Litig.*, 565 F. Supp. 3d 1076, 1083 (N.D. Ill. 2021) (at preliminary approval, "the purpose of the inquiry is only to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing, not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards.") (cleaned up). Indeed, "[a]t this preliminary stage, the Court need *only* determine whether the settlement is within the range of possible approval." *Smith*, No. 13-CV-0370-MJR-PMF, 2014 U.S. Dist. LEXIS 192738, at *5 (emphasis in original) (internal citation and quotation omitted).

As a matter of public policy, the law favors and encourages settlements. *Nat'l Cas. Co. v. White Mts. Reinsurance Co. of Am.*, 735 F.3d 549, 556 (7th Cir. 2013). Indeed, there is an "overriding public interest in favor of settlement of class actions." *Donovan v. Fitzsimmons*, 778 F.2d 298, 307 (7th Cir. 1985) (quotation marks and citation omitted).

The Court's review of a proposed class action settlement generally involves three steps:

1. Consideration of a written motion for preliminary approval;

2. Dissemination of notice of the Settlement to Class Members; and

3. Conducting a final approval hearing where, among other things, Class Members have an opportunity to present their views regarding the settlement.

Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* §§ 11.22 *et seq.* (5th ed. 2011). Courts use this three-step process to act as an independent guardian of class interests and safeguard class members' procedural due process rights. *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013).

Under this first step of the settlement process, the Court conducts a preliminary evaluation to determine "whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (internal citations omitted). Moreover, the main question the Court should ask at the preliminary

stage is whether the proposed settlement falls "within the range of possible approval." *Baum v. Mayo Clinic Ambul.*, No. 20-cv-409-wmc, 2022 U.S. Dist. LEXIS 19509, at *10 (W.D. Wis. Feb. 3, 2022) (internal citations omitted); *Chesemore v. All. Holdings, Inc.*, No. 09-cv-413-WMC, 2014 WL 12730484, at *1 (W.D. Wis. Apr. 9, 2014); *In re AT&T Mobility Wireless Data Servs. Sales Litig., 27*0 F.R.D. 330, 346 (N.D. Ill. 2010); *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980) *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ("The courts of appeals have required that district court approval of a settlement pursuant to Rule 23(e) be given only where the district court finds the settlement fair, reasonable and adequate."). If the Court finds the Settlement within the range of possible approval at the time of preliminary approval, notice of the Settlement will be given to Class Members, and a hearing scheduled to consider final settlement approval.

Accordingly, the Court assesses the ultimate question of fairness only after the final hearing, after notice of the settlement has been given to the class members, and after the class members have had the opportunity to voice their view of the settlement. Moore's Federal Practice, 23.165[3] (3d ed. 2005). Indeed, "[i]n this circuit, the practice is for the court to give its preliminary approval after reviewing the proposed settlement and then to give final approval after notifying the class members and holding a hearing." *Jones v. Cruisin' Chubbys Gentlemen's Club*, No. 17- cv-125-JDP, 2018 WL 11236460, at *1 (W.D. Wis. Nov. 21, 2018).

However, the Supreme Court has cautioned that, in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also EEOC v. Hiram Walker & Sons, Inc., 76*8 F.2d 884, 889 (7th Cir. 1985), cert. *denied, 47*8 U.S. 1004 (1986); *Isby*, 75 F.3d at 1196-97.

At this juncture, Plaintiff requests that the Court grant preliminary approval of the Settlement, which only requires that the Court find that the proposed Settlement is fair, reasonable, and adequate and "within the range of possible approval." *Chesemore*, 2014 WL 12730484, at *1.

## B. The Settlement Satisfies Seventh Circuit Factors

Here, the Settlement before the Court is fair, reasonable, and adequate, and well within the range of possible approval because it provides credit monitoring and monetary benefits to Class Members, injunctive relief in the form of continued maintenance of robust cybersecurity enhancements for Snap-on's IT systems, avoids the uncertainty and expense of prolonged litigation, and avoids the need to resolve contentious factual and legal issues. The Settlement Agreement further satisfies the factors set forth by the Seventh Circuit in assessing whether a proposed settlement agreement is within the range of fairness, reasonableness, and adequacy:

> (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.

*Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (citation omitted).[3]

In weighing these factors, a district court should "recognize[] that the first factor, the relative strength of plaintiffs' case on the merits as compared to what the defendants offer by way of settlement, is the most important consideration." *Isby*, 75 F.3d at 1199. The Seventh Circuit has explained that district courts should "consider the facts in the light most favorable to the settlement." *Id.* at 1198-99 (internal quotations and citation omitted). Further, "[t]he essence of settlement is compromise . . . [t]hus, the parties to a settlement will not be heard to complain that

---

[3] Congress amended Rule 23 in 2018 to add a list of concerns that courts should consider when deciding whether to approve a class action settlement. FED. R. CIV. P. 23(E)(2), advisory committee note to 2018 amendment; *see Id.* R. 23(e)(2)(A)-(D). But these factors were not intended to "displace" any of the tests devised by the courts of appeals. FED. R. CIV. P. 23(E)(2), advisory committee note to 2018 amendment. Courts within the Seventh Circuit continue to apply the Seventh Circuit factors, albeit, as Plaintiff does here, with a "focus" on the "core concerns" expressed in the amended Rule. *See In re Tiktok, Inc., Consumer Priv. Litig.*, No. MDL No. 2948, 2022 U.S. Dist. LEXIS 134177, at *54 n.23 (N.D. Ill. July 28, 2022) (quoting FED. R. CIV. P. 23(E)(2), advisory committee note to 2018 amendment).

the relief afforded is substantially less than what they would have received from a successful resolution *after* trial." *E.E.O.C.*, 768 F.2d at 889 (emphasis original). Indeed, a district court should not reject a settlement "solely because [the settlement] does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200. Consideration of these factors confirms that the proposed Settlement here is well "within the range of possible approval" and weighs in favor of the Court preliminarily approving the Settlement.

1. **The Strength of Plaintiff's Case Is Well-Balanced Against the Amount Offered in the Settlement and the Complexity, Length, and Expense of Further Litigation Favors Settlement Now**

"[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan*, 778 F.2d at 309. Here, Defendant disputes Plaintiff's allegations and denies that it is liable for any harm caused to Plaintiff from the cyberattack. It has indicated it will vigorously defend the case, including filing an extensive motion to dismiss. While Plaintiff has arguments and authorities that can support his allegations, the number of issues in this case, which centers on a developing area of law—data breach litigation—creates significant uncertainty. Even assuming Plaintiff could defeat a motion to dismiss, there is no guarantee that the Court or a jury would find Plaintiff's arguments more persuasive during a trial or subsequent appeals. Thus, despite Plaintiff's confidence in the strength of his case, numerous legal issues and factual disputes exist that undermine the certainty of a more favorable outcome for the Class.

In addition, there are inherent risks associated with taking any data breach class action to trial, including pre-trial risks of obtaining class certification and defeating summary judgment. And plaintiffs in data breach cases often allege injuries, such as the risk of future identity theft and loss of control of their sensitive information, which are the subject of intense controversy. Even if class certification is obtained and Plaintiff is successful at trial, or if Snap-on obtains summary

judgment, Snap-on or Plaintiff would likely appeal, causing further delay and raising expenses. The Settlement allows for Class Members to obtain benefits within the near future—as opposed to potentially waiting for years—and eliminates the possibility of receiving no benefits. Resolution in the near-term also helps mitigate any harm that the Class Members may have suffered by providing access to credit monitoring benefits in the near-term, rather than after prolonged litigation.

Moreover, the complexity, length, and expense of further litigation favors settlement now. Continued litigation would likely involve motions to dismiss, costly discovery involving experts regarding damages, motions for summary judgment, a motion for class certification, and one or more interlocutory appeals, all of which would delay final resolution. Litigating this case to a favorable conclusion will require a considerable amount of time and resources, weighing in favor of accepting the Settlement now. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997); *see also In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. at 347 ("Even if Plaintiffs were to succeed on the merits at some future date, a future victory is not as valuable as a present victory. Continued litigation carries with it a decrease in the time value of money, for '[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now.'") (internal citation omitted)). This factor also weighs in favor of preliminary approval. Thus, given the risks Plaintiff faces going forward, the amount offered in Settlement — both monetary and non-monetary — is well-balanced against the hurdles Plaintiff will have to overcome to find success later down the road.

2. **Thus Far, There Has Been No Opposition to the Settlement and the Reaction of the Members of the Class to the Settlement Has Been Positive**

At the current stage of the litigation, prior to the dissemination of the class notice, no Class Members, including the named Plaintiff, have indicated any objections to the proposed

Settlement and have been in support of the Settlement. Accordingly, this factor is neutral in the analysis at this stage of the proceedings.

### 3. The Opinion of Competent Counsel Is That the Settlement Is Fair, Reasonable, and Adequate, and Should Be Approved

Class Counsel is familiar with data breach class action litigation and endorses the proposed Settlement. Indeed, the work of proposed Class Counsel in this action to date, as well as their experience prosecuting complex litigation matters, demonstrates that they are well-qualified to represent the Settlement Class and opine on the fairness of the proposed Settlement. Migliaccio Decl. ¶¶ 2-7 and "Exhibit A" to Migliaccio Declaration.

### 4. The Stage of the Proceedings and the Amount of Discovery Completed Favors Settlement Now

As discussed *infra*, the Parties have participated in informal confirmatory discovery. Plaintiff requested, received, and reviewed information and documentation from Snap-on in connection with mediation and settlement negotiations. Migliaccio Decl. ¶ 16. Plaintiff has expended significant efforts in the factual investigation of the Security Incident in anticipation of discovery. Migliaccio Decl. ¶¶ 11, 20. Thus, this factor weighs in favor of Settlement now.

### C. The Settlement Is Fair, Reasonable, and Adequate Under Rule 23(e)(2)

Under Rule 23(e)(2), courts determining the fairness of a class action settlement must consider whether:

    (A) The adequacy of representation by class representatives and class counsel;
    (B) Whether settlement negotiations were done fairly at arm's length;
    (C) The adequacy of relief provided under the settlement (including the terms of any proposed award of attorney fees); and
    (D) the equity of treatment of class members relative to one another.

Fed. R. Civ. P. 23(e). The proposed Settlement readily satisfies all of the foregoing factors such that the Court will likely be able to grant final approval of the Settlement. Fed. R. Civ. P.

23(e)(1)(B) (requiring courts at the preliminary approval stage to consider whether it will "likely be able to (i) approve the proposal [as fair, reasonable, and adequate] under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the propos[ed settlement].").

Here, the Class Representatives and Class Counsel adequately represent the Class and the Settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(A), (B). Class Counsel are highly experienced in complex consumer class-action litigation—in particular, data breach class action—and negotiated this Settlement at arm's length. Migliaccio Decl. ¶¶ 3, 20. Plaintiff has no conflicts of interest with the other members of the Settlement Class, his Personal Information was allegedly comprised in the same Security Incident as the other Class Members, and he shares the Class's interests of maximizing their recovery and preventing future harm. Migliaccio Decl. ¶ 54.

Additionally, Plaintiff has achieved an excellent result for the Class. All Class Members are eligible for an additional year of free credit monitoring, totaling three years of free three-bureau credit monitoring and up to $1,000,000 of coverage for identity theft incidents. S.A., ¶ 39. Class Members may also claim up to $2,500 in compensation for verified out-of-pocket expenses incurred because of the Security Incident, as well as up to $750 as reimbursement for time spent addressing the Security Incident through a simple attestation of the time lost and their actual hourly wage. S.A., ¶ 36. Moreover, Snap-on is continuing to maintain data security enhancements to prevent a reoccurrence of the alleged harm. S.A., ¶ 40.

Further, a proposed settlement is presumed to be fair and reasonable when it is the result of arm's length negotiations. *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chicago*, 834 F.2d 677, 681-82 (7th Cir. 1987); *Armstrong*, 616 F.2d at 325; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 375-76 (D.D.C. 2002) ("A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations'") (internal quotations and citation omitted)); *In re Holocaust*

*Victim Assets Litig.*, 105 F. Supp. 2d 139, 145-46 (E.D.N.Y. 2000) (in determining fairness, the "consideration focuses on the negotiating process by which the settlement was reached") (internal quotation omitted)). This presumption is applicable here.

As discussed above, the Settlement is the result of prolonged arm's length negotiations, including a mediation and numerous telephone conferences and e-mails directly between experienced counsel who had a comprehensive understanding of the strengths and weaknesses of each party's claims and defenses. Migliaccio Decl. ¶¶ 16, 20. The negotiations were mediated and facilitated by an experienced mediator, Bruce Friedman, who has substantial experience in class actions, including data breach class actions. Migliaccio Decl. ¶ 15. The involvement of a neutral mediator in the settlement process confirms a settlement as non-collusive. *See, e.g., G.F. v. Contra Costa Cnty.*, No. 13-cv-03667, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal quotation marks and citation omitted). Moreover, the Settlement was reached only after Class Counsel analyzed information provided by Snap-on in informal and confirmatory discovery and performed other research and investigation related to the Security Incident. Migliaccio Decl., *Id.* Given these facts, the Settlement is shown to be non-collusive.

The Settlement also proposes substantial relief to the Class and satisfies the third consideration, which focuses on the adequacy of relief to the class. To determine whether a proposed settlement affords adequate relief the Court must consider a set of four factors, each of which is discussed below.

### 1. The Costs, Risks, and Delay of Trial and Appeal

The first of these factors is "[t]he costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). Here, this factor largely mirrors the first two *Wong* factors (the strength of plaintiffs' case compared to the terms of the proposed settlement and the complexity, length and expense of

further litigation) (*see* Section III(B)(1) *supra*). Thus, as stated above, settlement now is favorable to all parties.

<strong>2. The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class Member Claims</strong>

Here, the Settlement builds on the list of impacted individuals whose names, addresses, and other contact information are maintained by Snap-on. The Settlement Administrator will provide notice of the Settlement via U.S. Mail and, for any Mail Notices that are returned undeliverable with forwarding address information, the Settlement Administrator shall re-mail the Summary Notice to the updated address as indicated. For any U.S. Mailed Summary Notices that are returned undeliverable without forwarding address information, the Settlement Administrator shall use reasonable efforts to identify updated mailing addresses (such as running the mailing address through the National Change of Address Database) and (a) re-mail the Summary Notice to the extent an updated address is identified, and (b) email the Summary Notice if Snap-on has a valid email address for that Settlement Class Member. The Settlement Administrator need only make one attempt to re-mail any Summary Notices that are returned as undeliverable. S.A., ¶ 57; *see also* Migliaccio Decl., ¶ 34. Accordingly, the Notice Program includes a high rate of direct notice to Class Members. Further, the Settlement provides for a claims process that requires minimal documentation from Class Members while conferring significant benefits to the Class. S.A., ¶ 36. Each Class Member need only activate a code given to them in order to benefit from the offered additional year of free credit monitoring services. S.A., ¶ 39. Settlement Class Members may also claim up to $2,500 of documented losses resulting from fraud or identity theft, as well as $750 for out-of-pocket losses and lost time mitigating the impact of the Security Incident, with documentation only required for any claimed unreimbursed Out-of-Pocket expenses or other documented losses resulting from instances of fraud and/or identity theft. S.A., ¶ 36. For lost time, a

simple attestation will suffice. Therefore, the simplified claims process weighs in favor of preliminary approval of the Settlement.

### 3. The Terms of Any Proposed Fee Award and Costs, Including Timing of Payment

Class Counsel will separately file a motion for an award of attorneys' fees and reimbursement of litigation costs and expenses, *i.e.*, a Fee Award and Costs. S.A., ¶¶ 76. Notably, there is no "free sailing" clause in the Settlement, and Plaintiff's forthcoming application for a Fee Award and Costs will be subject to approval by this Court, and the Court itself will retain discretion to ensure that any Fee Award and Costs will be fair. Finally, the Settlement Agreement's effectiveness and finality are not dependent on any award of fees, costs, and expenses. S.A., ¶ 78.

### 4. The Presence of Any Agreements Between the Parties Separate from the Settlement Agreement

There are no such agreements in this case. Thus, this factor weighs in favor of preliminary approval. Accordingly, the fourth factor, whether class members are treated equitably relative to each other, Fed. R. Civ. P. 23(e)(2)(D), also supports preliminary approval. The proposed Settlement treats Class Members equitably relative to each other, as all Class Members whose Personal Information was allegedly compromised in the Security Incident will have the same remedy options.

## V. CERTIFICATION OF THE SETTLEMENT CLASS

As the Supreme Court has recognized, the "settlement only class" has become a "stock device" and all federal Circuits have recognized its utility. *Amchem*, 521 U.S. at 618 (1997); *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) (stating that courts favor the use of settlement classes "to foster negotiated solutions to class actions"). A settlement class in complex litigation "actually enhances absent class members' opt out rights

because the right to exclusion is provided simultaneously with the opportunity to accept or reject the terms of a proposed settlement." *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995). When granting preliminary approval of a class action settlement, it is appropriate for a court to certify a class for settlement purposes only. *Amchem*, 521 U.S. at 620 (explaining that the same standards apply to class certification for purposes of settlement as to any other motion for class certification, except that an inquiry into trial management problems is unnecessary).

### A. The Requirements Under Fed. R. Civ. P. 23(a) Are Satisfied

Rule 23(a) sets forth the following prerequisites for certifying a class: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Additionally, where certification is sought under Rule 23(b)(3), the plaintiffs must demonstrate that common questions of law or fact predominate over individual issues and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3). These requirements are satisfied here.

#### 1. The Settlement Class Is So Numerous That Joinder of Individual Members Is Impracticable

Numerosity is satisfied because, according to Snap-on's investigation into the Security Incident, approximately 42,801 individuals comprise the Class. This easily meets the numerosity requirement. *Irish v. BNSF Ry. Co.*, No. 08-CV-469-SLC, 2009 WL 276519, at *13 (W.D. Wis. Feb. 4, 2009) (on motion to remand, Court found that proposed class consisting of up to 369 members satisfied numerosity).

#### 2. There Are Questions of Law and Fact Common to the Settlement Class

Second, there are questions of law and fact common to all Class Members. Rule 23(a)(2) is satisfied if class claims raise at least one common question that will generate "common answers" likely to "drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, there are questions of law and fact common to the proposed Settlement Class that predominate over any individual questions. These questions include, but are not limited to:

- whether Snap-on owed a duty to Plaintiff and members of the Class to adequately protect their Personal Information and to provide timely and accurate notice of the Security Incident to Plaintiff and the Class, and whether it breached these duties;

- whether Snap-on violated federal and state laws thereby breaching its duties to Plaintiff and the Class as a result of the Security Incident;

- whether Snap-on knew or should have known that its network was vulnerable to attacks from hackers and cybercriminals;

- whether Snap-on's conduct, including its failure to act, resulted in or was the proximate cause of the Security Incident resulting in the theft of current and former associates' and franchisees' Personal Information;

- whether Snap-on continues to breach duties to Plaintiff and Class; and

- whether Snap-on has sufficiently addressed, remedied, or protected Plaintiff and Class members following the Security Incident and has taken adequate preventive and precautionary measures to ensure the Plaintiff and Class members will not experience further harm.

These common questions predominate over any individual questions that may exist. *Butler v. Sears, Roebuck & Co., 727* F.3d 796, 801 (7th Cir. 2013) ("predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation . . . common issues need only predominate, not outnumber individual issues.") (citations omitted)).

### 3. Plaintiff's Claims Are Typical of the Claims of the Settlement Class

Third, Plaintiff's claims and the defenses thereto are typical of the claims and defenses of the Settlement Class. "[A] plaintiff's claim is typical if it arises from the same event or practice or course

of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (internal citations omitted). Here, Plaintiff's claims are typical of the claims of the Settlement Class because they arise out of the same course of conduct by Snap-on—the Security Incident—and rest on exactly the same legal theory—whether Snap-on owed Plaintiff and Class Members a duty to adequately protect their Personal Information and to provide timely and accurate notice of the Security Incident to Plaintiff and Class Members, and whether it breached these duties. Moreover, "[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). The Rule 23(a)(3) typicality requirement is satisfied.

### 4. The Interests of Plaintiff and Proposed Settlement Class Counsel Are Aligned with the Interests of the Settlement Class

Fourth, Plaintiff and Class Counsel will fairly and adequately protect the interests of the Settlement Class. "Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to the class." *Susman v. Lincoln American Corp.*, 561 F.2d 86, 90 (7th Cir. 1977). Plaintiff Carmack has demonstrated that he is well-suited to represent the Settlement Class, as he has prosecuted this action on behalf of and to the benefit of the Settlement Class. He has already provided information for pleadings and settlement discussions, informal discovery responses, engaged with Class Counsel regarding the litigation, participated in the settlement negotiations via email, and approved the proposed Settlement terms. Migliaccio Decl. ¶ 51. Similarly, Class Counsel are well-qualified to represent the Settlement Class because Migliaccio & Rathod, LLP is a nationally recognized class action law firm with particular expertise in the data privacy space. Migliaccio Decl. ¶¶ 2-7. It has handled many complex class actions, including a multitude of data breach class

actions. Migliaccio Decl., *id.* Indeed, Class Counsel have worked diligently on behalf of the Class to obtain information from Snap-on regarding the Security Incident and used that information to negotiate the Settlement now before the Court. Migliaccio Decl. ¶¶ 16, 20.

### B. The Requirements Under Fed. R. Civ. P. 23(b)(3) Are Satisfied

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating of the controversy." Fed. R. Civ. P. 23(b)(3).

Here, the numerous questions common to the Class, including those listed above, demonstrate commonality under Rule 23(a)(2), and predominate over any individual issues. The key elements of Plaintiff's claims—the existence of inadequate data security protections, Snap-on's knowledge or constructive knowledge of those failures, the exposure of Class Members' Personal Information as a result of the Security Incident, and the existence and amount of resulting damages, for example—are common issues, and thus the class is "sufficiently cohesive to warrant adjudication by representation," *Chicago Teachers Union, Local No. 1 v. Board of Educ. Of City of Chicago*, 797 F.3d 426, 444 (7th Cir. 2015) (citation omitted). Moreover, the predominance requirement "scarcely demands commonality as to all questions." *Id.*

Further, class resolution is superior to other available means for the fair and efficient adjudication of the claims in this case. Here, the potential damages suffered by individual Class Members have relatively low dollar amounts and may be uneconomical to pursue on an individual basis given the burden and expense of prosecuting individual claims. Moreover, there is little doubt that resolving all Class Members' claims jointly, particularly through a class-wide settlement negotiated on their behalf by experienced counsel well-versed in class action litigation, is superior to a series of individual lawsuits and promotes judicial economy. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 658 (7th Cir. 2015).

25

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, certification of the proposed Settlement Class is appropriate.

## VI. APPOINTMENT OF SETTLEMENT CLASS REPRESENTATIVE AND SETTLEMENT CLASS COUNSEL

"An order certifying a class action . . . must also appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). In appointing class counsel, courts should consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

The work of proposed Class Counsel in this action to date, as well as their experience prosecuting complex litigation matters, demonstrate that proposed Class Counsel are well- qualified to represent the Settlement Class. Migliaccio Decl. ¶¶ 2-7, 16, 20. Accordingly, the Court should appoint Nicholas A. Migliaccio, Jason Rathod, and Tyler Bean of Migliaccio & Rathod, LLP, as well as Larry A. Johnson of Hawks Quindel, S.C. as Class Counsel. The Court should also appoint, as Class Representative, Plaintiff Carmack, who has ably represented the interests of all class members. Migliaccio Decl. ¶ 51.

## VII. THE NOTICE PROGRAM SATISFIES ALL APPLICABLE REQUIREMENTS

Under Rule 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Thus, Rule 23(e) requires notice that is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the [settlement proposed] and afford them an opportunity to present their objections." *Towers v. City of Chicago*, 173 F.3d 619, 628 (7th Cir. 1999).

The proposed Notice meets these requirements. The Settlement Administrator will provide Notice pursuant to the Notice Program as follows: the Settlement Administrator shall send the Summary Notice via U.S. Mail Notice to all such Settlement Class Members for whom Snap-on can ascertain a mailing address from its records with reasonable effort. For any Mail Notices that are returned undeliverable with forwarding address information, the Settlement Administrator shall re-mail the Summary Notice to the updated address as indicated. For any U.S. Mailed Summary Notices that are returned undeliverable without forwarding address information, the Settlement Administrator shall use reasonable efforts to identify updated mailing addresses (such as running the mailing address through the National Change of Address Database) and (a) re-mail the Summary Notice to the extent an updated address is identified, and (b) email the Summary Notice if Snap-on has a valid email address for that Settlement Class Member. S.A., ¶ 57. The Summary Notice, attached as Exhibit C to the Settlement Agreement, is clear and concise and includes all information required by Rule 23(c)(2)(B).[4] Further, the Settlement Administrator will establish a Settlement Website that will include both the Summary and Long Form Notices and a toll-free telephone number with a live operator that Class Members can call for more information regarding the Settlement. S.A., ¶ 54.

The proposed Notice Program is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co., 33*9 U.S. 306, 314 (1950). Thus, the

---

[4]     Specifically, it provides detailed information concerning: (a) the rights of Class Members, including the how and by when to lodge objections or opt out; (b) the nature of the litigation and the claims at issue; (c) the proposed Settlement; (d) the available recoveries to Class Members; (e) the process for filing a proof of claim; (f) that fees and expenses are to be sought by Plaintiff's counsel from the Settlement Fund; and (g) the date of the Final Approval Hearing. It further advises Class Members on how to obtain additional information about the Settlement, including the Long Form Notice and Settlement Agreement, from the Settlement Website.

proposed method of Notice described above satisfies due process requirements. *See Eisen v. Carlisle & Jacquelin, 41*7 U.S. 156, 173 (1974).

## VIII.   CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that the Court: (1) certify the Settlement Class for purposes of the Settlement; (2) preliminarily approve the Settlement as set forth in the Settlement Agreement; (3) approve the form and manner of Notice of the Settlement to the Settlement Class; and (4) set a hearing date for Final Approval of the proposed Settlement.

Dated: January 20, 2023                                 Respectfully submitted,

s/ LARRY A. JOHNSON
Larry A. Johnson Bar Number 1056619
Attorneys for Plaintiff
Hawks Quindel, S.C.
5150 North Port Washington Road, Suite 243
Milwaukee, WI 53217
Telephone: (414) 271-8650
Fax: (414) 207-6079
E-mail: ljohnson@hq-law.com

/s/ *Nicholas A. Migliaccio*

Nicholas A. Migliaccio (admitted pro hac vice)
Jason S. Rathod (admitted pro hac vice)
Tyler J. Bean (admitted pro hac vice)
**MIGLIACCIO & RATHOD, LLP**
412 H Street, NE, Suite 302
Washington, DC  20002
Telephone: 202-470-520
Facsimile: 202-800-2730
Email: nmigliaccio@classlawdc.com

*Proposed Class Counsel for Plaintiff and the Proposed Settlement Class*