# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JOHN CARMACK,

        Plaintiff,

    v.                                      Case No. 22-CV-695

SNAP-ON INCORPORATED,

        Defendant.

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES, COSTS, AND SERVICE AWARD

i

# TABLE OF CONTENTS

**SECTION:**                                                                    **PAGE:**

TABLE OF CONTENTS ....................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................ v

I.      INTRODUCTION ...................................................................................................... 1

II.     CASE SUMMARY ..................................................................................................... 2

        A.      Initial Investigation and Communications .................................................. 2

        B.      Procedural Posture ...................................................................................... 2

        C.      History of Negotiations ................................................................................ 3

III.    SUMMARY OF SETTLEMENT .............................................................................. 4

        A.      Settlement Class .......................................................................................... 4

        B.      Settlement Benefits ...................................................................................... 4

        C.      Attorneys' Fees, Costs, and Plaintiff's Service Awards .......................... 6

        D.      The Notice and Claims Process .................................................................. 7

                1.      CAFA Notice .................................................................................. 7

                2.      Class Notice .................................................................................... 7

                3.      Claims, Exclusions, and Objections ............................................. 9

        E.      Claims Processing and Payment ................................................................. 9

        F.      Release ......................................................................................................... 9

IV.     LEGAL STANDARD ................................................................................................ 10

V.      ARGUMENT .............................................................................................................. 11

        A.      The Settlement Administrator Provided Notice Pursuant to this Court's Preliminary

                Approval Order and Satisfied Due Process as Well as Rule 23. ...................... 11

B.  The Settlement Terms are Fair, Adequate, and Reasonable, and Meet the Requirements of
    Federal Rule 23(e)(2) ................................................................................................. 13

    1.  Class Representatives and Class Counsel have adequately represented the Class......... 14

    2.  The proposal was negotiated at arm's length. ............................................................ 15

    3.  The relief provided for the Class is adequate. ............................................................ 16

        a.  The costs, risks, and delay of trial and appeal weigh in favor of approval. ........... 17

        b.  The effectiveness of the proposed method of distributing relief to the Class,
            including the method of processing Class Member claims, is objective, efficient,
            and fair. ........................................................................................................... 18

        c.  The attorneys' fees, costs, and Service Awards that Plaintiff requested are fair and
            reasonable. ...................................................................................................... 18

        d.  No additional agreements are required to be identified under Rule 23(e)(3).......... 19

    4.  The Settlement treats Class Members equitably relative to each other. ....................... 19

C.  The Settlement Also Warrants Approval in Light of the Factors Traditionally Considered
    by Seventh Circuit Courts........................................................................................... 19

    1.  Factors (1) & (2): Continued litigation would be costly and risky for the Class .......... 20

    2.  Factors (3) & (4): The response to the Settlement has been positive, with no
        objections................................................................................................................ 21

    3.  Factor (5): The Opinion of Competent Counsel Is That the Settlement Is Fair,
        Reasonable, and Adequate, and Should Be Approved ................................................ 21

    4.  Factor (6): The Stage of the Proceedings and the Amount of Discovery Completed
        Favors Settlement Now............................................................................................. 22

D.    Class Counsel's Fee and Expense Request of $225,000 is Reasonable and Should be Approved ............................................................................................................ 22

    1.    The Court Should Approve Reimbursement of $8,827.50 in Expenses .................... 22

    2.    The Court Should Approve $216,172.50 in Attorneys' Fees Under the Lodestar Approach ............................................................................................................... 23

    3.    The Court Should Approve the Service Award to Plaintiff Carmack in the Amount of $3,000 ................................................................................................................... 28

VI.    CONCLUSION ................................................................................................................... 29

# TABLE OF AUTHORITIES

## Cases

*Americana Art China Co. v. Foxfire Printing & Packaging, Inc.,*
    743 F.3d 243 (7th Cir. 2014) ............................................................................... 23

*Armstrong v. Bd. of Sch. Dirs.,*
    616 F.2d 305, 325 (7th Cir. 1980) ....................................................................... 16

*Bailey v. Grays Harbor Cnty. Pub. Hosp. Dist.,*
    No. 20-2-00217-14 (Wash. Super. Ct. Grays Harbor Cnty. May 27, 2020) ......... 17

*Baksh v. IvyRehab Network, Inc.,*
    No. 7:20-CV-01845 (S.D.N.Y. Jan. 27, 2021) ...................................................... 17

*Beesley v. Int'l Paper Co.,*
    No. 06- 703, 2014 WL 375432, *3 (S.D. Ill. Jan. 31, 2014) ................................. 22

*Boeing Co. v. Van Gemert,*
    444 U.S. 472, 478 (1980) ..................................................................................... 22

*Bynum v. Cmty. Loans of Am., Inc.*
    No. 20-cv-1564-pp, 2022 U.S. Dist. LEXIS 188785 (E.D. Wis. Oct. 17, 2022)........ 14, 15

*Carlotti v. Asus Comput. Int'l,*
    No. 18-cv-03369-DMR, 2020 U.S. Dist. LEXIS 108917 (N.D. Cal. June 22, 2020) ................... 24

*Chesemore v. All. Holdings, Inc.,*
    No. 09-cv-413-wmc, 2014 WL 4415919 (W.D. Wis. Sept. 4, 2014) ..................... 25

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992) .............................................................................. 16

*Cook v. Niedert,*
    142 F.3d 1004, 1016 (7th Cir. 1998) .................................................................... 28

*Daluge v. Cont'l Cas. Co.,*
    No. 15-CV-297-WMC, 2018 WL 6040091 (W.D. Wis. Oct. 25, 2018) ............. 23, 25

*Donovan v. Est. of Fitzsimmons,*
    778 F.2d 298 (7th Cir. 1985) ................................................................................ 20

*Door v. O'Brien,*
    No. 19-C-137, 2021 U.S. Dist. LEXIS 94898, (E.D. Wis. May 19, 2021) ............ 25

*E.E.O.C. v. Hiram Walker & Sons, Inc.,*
    768 F.2d 884 (7th Cir. 1985) .......................................................................... 11, 20

*Farnham v. Caribou Coffee Co.,*
    No. 16-cv-295-wmc, 2017 U.S. Dist. LEXIS 214929 (W.D. Wis. Dec. 15, 2017) ............... 12

*Fath v. Am. Honda Motor Co.,*
    No. 18-CV-1549 (NEB/LIB), 2020 U.S. Dist. LEXIS 252264 (D. Minn. Sep. 11, 2020) ........... 24

*Fox v. Iowa Health Sys.,*
    No. 3:18-CV-00327-JDP, 2021 WL 826741 (W.D. Wis. Mar. 4, 2021) ................ 25

*Gaskill v. Gordon,*
    160 F.3d 361, 362 (7th Cir. 1998) ........................................................................ 19

*Hammond v. Bank of N.Y. Mellon Corp.,*
    No. 08 Civ. 6060(RMB)(RLE), 2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. June 25, 2010) ........... 17

*Harman v. Lyphomed, Inc.,*

945 F.2d 969, 975 (7th Cir. 1991) .................................................................................................. 26

*Heekin v. Anthem, Inc.,*
   No. 1:05-cv-01908-TWP-TAB, 2012 U.S. Dist. LEXIS 165464 (S.D. Ind. Nov. 20, 2012) ...................... 29

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.,*
   293 F.R.D. 21 (D. Me. 2013) ...................................................................................................... 17

*In re Holocaust Victim Assets Litig.,*
   105 F. Supp. 2d 139, 145-46 (E.D.N.Y. 2000) ............................................................................ 16

*In re Lorazepam & Clorazepate Antitrust Litig.,*
   205 F.R.D. 369 (D.D.C. 2002) .................................................................................................. 16

*In re Synthroid Mkt. Litig.,*
   264 F.3d 712 (7th Cir. 2001) ........................................................................................... *passim*

*In re Target Corp. Customera Sec. Breach Litig.,*
   No. 14-2522 (PAM/JJK), 2015 WL 7253765, (D. Minn. Nov. 17, 2015) .................................... 18

*In re Tiktok, Inc., Consumer Priv. Litig.,*
   No. MDL No. 2948, 2022 U.S. Dist. LEXIS 13417723 (N.D. Ill. July 28, 2022) ........................ 11

*In re VMS Sec. Litig.,*
   No. 89 C 9448, 1992 U.S. Dist. LEXIS 12141, 1992 WL 203832 .................................... 12, 13

*Isby v. Bayh,*
   75 F.3d 1191, 1196 (7th Cir. 1996) ........................................................................................ 10

*Kolinek v. Walgreen Co.,*
   311 F.R.D. 483, 502 (N.D. Ill. 2015) ...................................................................................... 29

*Leung v. XPO Logistics, Inc.,*
   326 F.R.D. 185 (N.D. Ill. May 30, 2018) ................................................................................ 23

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Tr. Co.*
   of Chicago, 834 F.2d 677 (7th Cir. 1987) ........................................................................ *passim*

*Mathur v. Bd. of Trs. of S. Ill. Univ.,*
   317 F.3d 738 (7th Cir. 2003) ............................................................................................ *passim*

*Mowery v. Saint Francis Healthcare Sys.,*
   No. 1:20-cv-00013-SPC (E.D. Mo. Dec. 22, 2020) ................................................................ 16

*Mullane v. Cent. Hanover Bank & Trust Co.,*
   339 U.S. 306 (1950) ................................................................................................................ 12

*Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.,*
   776 F.2d 646 (7th Cir. 1985) .................................................................................................. 26

*Parker v. Villa of Greenfield LLC,*
   No. 20-cv-1696-pp, 2022 U.S. Dist. LEXIS 200285 (E.D. Wis. Nov. 3, 2022) ...................... *passim*

*Perdue v. Hy-Vee, Inc.,*
   550 F. Supp. 3d 572 (C.D. Ill. 2021) ...................................................................................... 27

*Petitt v. Saul,*
   No. 18-cv-504-wmc, 2020 U.S. Dist. LEXIS 258486 (W.D. Wis. June 30, 2020) .................... 25

*Powers v. Filters Fast, LLC,*
   No. 20-cv-982-JDP (Dkt. Nos. 71-1, 84) (W.D. Wis. July 22, 2022) ................................ 25, 27

*Purdy v. Sec. Sav. & Loan Asso.,*
   727 F. Supp. 1266 (E.D. Wis. 1989) .................................................................................. 26, 27

*Rates Tech., Inc. v. Speakeasy, Inc.,*
   685 F.3d 163, 172 (2d Cir. 2012) .......................................................................................... 26

*Schulte v. Fifth Third Bank,*
    805 F. Supp. 2d 560, 582 (N.D. Ill. 2011) ............................................................ 20, 22

*Silverman v. Motorola Sols., Inc.,*
    739 F.3d 956 (7th Cir. 2013) .................................................................................. 25

*Spano v. Boeing Co.,*
    No. 06-CV-743-NJR-DGW, 2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) ................ 24

*Spicer v. Chi. Bd. Options Exch.,*
    Inc., 844 F. Supp. 1226 (N.D. Ill. 1993) .............................................................. 22, 23

*Susman v. Lincoln American Corp.,*
    561 F.2d 86 (7th Cir. 1977) .................................................................................... 14

*Sutton v. Bernard,*
    504 F.3d 688, 694 (7th Cir. 2007) ........................................................................... 26

*Towers v. City of Chicago,*
    173 F.3d 619 (7th Cir. 1999) .................................................................................. 12

*United Founders Life Ins. Co. v. Consumers Nat'l Life Ins. Co.,*
    447 F.2d 647 (7th Cir. 1971) .................................................................................. 10

*Whitfield v. Trinity Rest. Grp., LLC,*
    No. 18-10973, 2019 U.S. Dist. LEXIS 182055 (E.D. Mich. Oct. 3, 2019) ................ 24

*Williams v. Rohm & Haas Pension Plan,*
    658 F.3d (7th Cir. 2011) ........................................................................................ 23

*Wong v. Accretive Health, Inc.,*
    773 F.3d 859 (7th Cir. 2014) .............................................................................. 10, 19

*Yvonne Mart Fox v. Iowa Health Sys.,*
    No. 3:18-cv-00327-JDP, 2021 U.S. Dist. LEXIS 40640 (W.D. Wis. Mar. 4, 2021) ............... 27, 29

## Rules

Fed R. Civ. P. 12(b)(6) ................................................................................................ 17
Fed. R. Civ. P. 23 ................................................................................................ *passim*
Fed. R. Civ. P. 23(e) ............................................................................................ *passim*
Fed. R. Civ. P. 23(e)(1) ............................................................................................... 11
Fed. R. Civ. P. 23(e)(2) ........................................................................................... 11, 13
Fed. R. Civ. P. 23(e)(3) ........................................................................................... 14, 19
Fed. R. Civ. P. 23(e)(2)(A) ...................................................................................... 14, 15
Fed. R. Civ. P. 23(e)(2)(B) ............................................................................................ 14
Fed. R. Civ. P. 23(e)(2)(C) ...................................................................................... 14, 16
Fed. R. Civ. P. 23(e)(2)(D) ........................................................................................... 14
Fed. R. Civ. P. 23(h) .................................................................................................... 23
Fed. R. Civ. P. 56 ........................................................................................................ 17

## Statutes

28 U.S.C. § 1715 ........................................................................................................... 7

## Other Authorities

*2 McLaughlin on Class Actions*
    § 6:7 (8th ed. 2011)................................................................................................ 15
*5 Newberg on Class Actions*
    §§ 15:56 & 15.70 (5th ed.) ................................................................................... 23
*Class Action Fairness Act ("CAFA")* ...................................................................... 7

Pursuant to Rule 23(e), Plaintiff John Carmack ("Plaintiff"), individually and on behalf of all others similarly situated, submits this Memorandum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement and Attorneys' Fees, Costs, and Service Award.

## I. INTRODUCTION

On January 26, 2023, this Court preliminarily approved a class action settlement between Plaintiff and Defendant Snap-on, Incorporated ("Snap-on" or "Defendant"). *See* Order Granting Preliminary Approval of Class Action Settlement (Doc. 29) (hereinafter "Preliminary Approval Order"). Under the terms of the agreement, Defendant has agreed to provide: (1) reimbursements for claims made for Lost Time and unreimbursed Out-of-Pocket losses incurred as a result of the Security Incident up to $750 and $2,500, respectively; (2) an additional year of triple-bureau credit monitoring services, for three years total; and (3) court approved attorneys' fees, costs up to $225,000, and Plaintiff's Service Award up to $3,000. *See* Settlement Agreement (Doc. 25 Ex. A) (hereinafter "S.A.") ¶¶ 36, 39, 74, 76. In addition to the benefits described above, the Settlement Agreement provides that Snap-on will maintain data security and business practice enhancements that were implemented after the Security Incident through at least December 31, 2024. *Id.* ¶ 40.

Class Counsel have zealously prosecuted Plaintiff's claims, achieving the Settlement only after extensive investigation, negotiations, and mediation with respected mediator Bruce Friedman. After this Court granted preliminary approval, the Settlement Administrator—with the help of the Parties— disseminated Notice to the Settlement Class. As of April 24, 2023, 727 Claim Forms have been submitted. *See* Declaration of Settlement Administrator, attached hereto as Exhibit A (hereinafter "Settlement Admin. Decl.") ¶ 17. The Claims Period is still open and will run through May 28, 2023. Preliminary Approval Order ¶ 37. The deadline for Class Members to request to be excluded from the settlement, or to object to it, was April 13, 2023. *Id.* Only thirty (30) timely requests for exclusion

1

have been submitted, and the Settlement Administrator has received zero (0) objections. Settlement Admin. Decl. ¶ 19.

## II.    CASE SUMMARY[1]

### A.    Initial Investigation and Communications

Snap-on is a global automotive tools manufacturer headquartered in Wisconsin. Class Action Complaint (Doc. 1) ("Compl.") ¶¶ 4, 17. As part of its business, Snap-on gathered Personal Information of its associates and franchisees, including Plaintiff and Members of the Settlement Class. *See id.* ¶ 18. Snap-on has its principal place of business located in Kenosha. Compl. ¶ 17.

Plaintiff alleges that, in March 2022, cybercriminals accessed Snap-on's network (the "Security Incident"). *See* Compl. ¶ 2. The data accessed in the Security Incident included current and former associates' and franchisees' first and last names, Social Security numbers, dates of birth, and employee identification numbers. *See id.*

### B.    Procedural Posture

As a result of the Security Incident, Plaintiff filed his Complaint on June 15, 2022, alleging causes of action for: (1) Negligence; (2) Breach of Implied Contract; (3) Unjust Enrichment/Quasi-Contract; (4) Breach of Fiduciary Duty; (5) Violations of Wisconsin's Notice of Unauthorized Acquisition of Personal Information; (6) Violations of Wisconsin's Deceptive Trade Practices Act; (7) Violations of the Colorado Consumer Protection Act; and (8) Declaratory/Injunctive Relief (the "Action"). *See* Compl. ¶¶ 63-132; Preliminary Approval Order ¶ 7.

On October 10, 2022, the Parties participated in a mediation and agreed to settle this matter on a class-wide basis. *See* Declaration of Nicholas Migliaccio, attached hereto as Exhibit B (hereinafter "Migliaccio Decl.") ¶ 14. On October 28, 2022, the Parties filed a Stipulated Motion to

---

[1] Sections II and III have been largely adopted from the Brief in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, filed January 20, 2023 (Doc. 25).

Stay Case (Doc. 16). The Parties informed the Court that they reached a settlement at mediation and were in the process of preparing the settlement documentation, requesting that all remaining deadlines be stayed, and stating that Plaintiff was going to file the instant motion on or before December 9, 2022. *See id.* The Court entered an Order staying the case and ordering that the instant motion be filed on or before December 9, 2022 (Doc. 17). Upon agreement, the Parties extended the stipulated stay to January 20, 2023, whereupon Plaintiff filed an Unopposed Motion for Settlement Preliminary Approval (Doc. 25). The order was granted on January 26, 2023 (Doc. 29). Plaintiff now submits this Unopposed Motion for Settlement Final Approval.

### C.     History of Negotiations

After the Complaint was filed, and before any responsive pleading was filed by Defendant, the Parties began discussing the potential for early resolution of the matter. Migliaccio Decl.¶ 11. The Parties agreed to mediate the matter with Bruce Friedman, a prominent mediator with significant experience in mediating data breach and privacy cases. *See id.* ¶ 12. Counsel for Plaintiff brought extensive experience in data breach class actions to the table, which, along with their internal investigation and the informal discovery produced by Snap-on, allowed Class Counsel to fully evaluate the strengths and weaknesses of Plaintiff's case and to conduct informed settlement negotiations. *See id.* ¶¶ 4, 8, 13, 15. The mediation took place on October 10, 2022. *Id.* ¶ 14. After several rounds of negotiation through the mediator, the Parties reached an agreement in principle on all material terms of the class settlement. *Id.* In the weeks following the execution of a term sheet, the Parties diligently negotiated final terms and drafted and finalized the Settlement Agreement, along with the accompanying notice forms, a claim form, and other exhibits. *See id.* ¶ 15. The Settlement Agreement and exhibits were finalized by the Parties on January 20, 2023. *Id.*

Despite the grounds that exist for each of Plaintiff's claims, which Snap-on denies, none are certain to resolve in Plaintiff's favor on the merits. Further litigation would subject Plaintiff to

numerous risks, including the risk that he and the other Settlement Class Members receive no recovery at all. The Settlement provides significant relief to Settlement Class Members, and Plaintiff strongly believes that the Settlement is favorable for the Settlement Class and is fair, reasonable, adequate, and worthy of final approval. *See id.* ¶¶ 21, 31; *see also* Preliminary Approval Order ¶ 4.

## III.    SUMMARY OF SETTLEMENT

### A.    Settlement Class

The Settlement Class includes all individuals residing in the United States "whose personal information was compromised in the data security incident that is the subject of the notice that Defendant sent to Plaintiff and others in substantially the same form on or after April 7, 2022." S.A. ¶ 33; Settlement Admin. Decl. ¶ 5. The Settlement Class specifically excludes: (i) Snap-on or any related entities, and their officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) any members of the judiciary who are or have presided over the instant Action and members of their families and staffs; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Security Incident or who pleads *nolo contendere* to any such charge. S.A. ¶ 33.

### B.    Settlement Benefits

The Settlement negotiated on behalf of the Class provides for numerous separate forms of relief:

First, Snap-on will provide direct monetary relief to Settlement Class Members, capped at $400,000 in the aggregate, for reimbursement of expenses incurred as a result of the Security Incident. *See id.* ¶ 43; Preliminary Approval Order ¶¶ 8-9. The payments available to Settlement Class Members are divided into two separate categories. S.A. ¶ 42; Preliminary Approval Order ¶ 8. The first category provides expense reimbursement for Out-of-Pocket Expenses and/or lost time

responding to the Incident for up to $750 per Settlement Class Member. S.A. ¶ 42; Preliminary Approval Order ¶ 8.

"Out-of-Pocket Expenses" are unreimbursed costs or expenditures incurred by a Settlement Class Member that are fairly traceable to the Incident that may include any of the following: (1) unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or fraud, falsified tax returns, or other possible misuse of a Settlement Class Member's personal information; (2) costs incurred on or after March 1, 2022 associated with accessing or freezing / unfreezing credit reports with any credit reporting agency; and (3) other miscellaneous expenses incurred related to any out-of-pocket expenses such as notary, fax, postage, copying, mileage, bank fees, cell phone charges (if charged by the minute), data charges (if charged based on the amount of data used), long-distance telephone charges or local travel expenses such as gasoline or rideshare fees. S.A. ¶ 42. Settlement Class Members may submit a claim for Out-of-Pocket Expenses by submitting a claim under penalty of perjury, with accompanying documentation, verifying Out-of-Pocket Expenses as a result of the Snap-on Incident. *Id.* For a lost time reimbursement, Settlement Class Members are to be reimbursed at their actual hourly rate, with a minimum of $15 per hour and up to a maximum of $25 per hour. *Id* ¶ 36. Settlement Class Members may submit claims for lost time with a simple attestation under penalty of perjury that they spent the claimed time addressing issues raised by the Incident and attesting to their hourly rate. *See* Preliminary Approval Order ¶ 8(b).

The second category of payments is reimbursement for each Settlement Class Member who has suffered an instance of identity theft or fraud and who submits a claim under penalty of perjury, with accompanying documentation, verifying documented losses resulting from the Snap-on Incident. *Id* ¶ 8(c); S.A. ¶ 36(b). Such individuals will be able to obtain up to $2,500 as reimbursement for Out-of-Pocket expenses as a result of the Security Incident. S.A. ¶ 36(b).

5

Second, in addition to the two years of free, three-bureau (3B) credit monitoring that Snap-on offered Settlement Class Members on or around April 7, 2022, Snap-on has offered an additional year of credit monitoring to all Class members, for a total of three (3) years of triple-bureau (3B) credit monitoring services (measured from April 2022), managed fraud assistance, a $1 million insurance reimbursement policy, and assistance in implementing further protections, including freezing and unfreezing credit. *See* S.A. ¶ 39. Settlement Class Members were not required to file a formal claim to obtain this benefit. *See id.* Instead, enrollment codes for the service were sent with the Notice to Settlement Class Members. *Id.* Settlement Class Members merely need to enroll and activate these services. *Id.*

Lastly, Snap-on will maintain data security and business practice enhancements that were implemented after the Security Incident through December 31, 2024. *See id* ¶ 40. These improvements are designed to better protect Plaintiff's and Settlement Class Members' personal information in the future. Preliminary Approval Order ¶ 8(c). Costs associated with these data security enhancements will be paid by Snap-on separate and apart from other Settlement benefits. *See* S.A. ¶ 40.

The maximum amount payable by Snap-on to the Settlement Class for the claims made for Out-of-Pocket Losses and Lost Time incurred by Settlement Class Members as a result of the Data Incident is $400,000. *Id.* ¶ 37. If the aggregate claimed amount for Lost Time or Out-of-Pocket Losses exceeds $400,000, the value of the payments to Settlement Class Members will be reduced on a *pro rata* basis, such that the aggregate value of all payments for these categories does not exceed $400,000. *Id.*

### C. Attorneys' Fees, Costs, and Plaintiff's Service Awards

Consistent with best practices, the Parties did not discuss payment of attorneys' fees, costs, expenses, or a service award until after the substantive terms of the class-wide settlement had been

agreed upon, other than that Snap-on would not object to a request for reasonable attorneys' fees, costs, expenses, and service award as may be ordered by the Court. *See* Migliaccio Decl. ¶ 17.

Plaintiff seeks, and Snap-on does not object to, an award of reasonable attorneys' fees to Plaintiff's counsel not to exceed $225,000, subject to Court approval. *See* S.A. ¶ 76. Snap-on will also pay Plaintiff a service award in the amount of $3,000 for his services rendered on behalf of the Settlement Class, subject to Court approval. *See* S.A. ¶ 74.

### D. The Notice and Claims Process

The Court has appointed the Angeion Group ("Angeion") as the Claims Administrator, with responsibility for class notice and settlement administration. *See* Preliminary Approval Order ¶ 27.

#### 1. CAFA Notice

In compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, Angeion prepared a notice of the Settlement for government records ("CAFA Notice"). On February 3, 2023, Angeion sent the CAFA Notice to the attorneys general of all states and territories, and to the Attorney General of the United States. *See* Settlement Admin. Decl. ¶ 4. The CAFA Notice mailings included copies of the documents listed in the CAFA Notice, including the Complaint, the [Proposed] Order Granting Preliminary Approval (Doc. 28), Long Form Notice, Summary Notice, Claim Form, and Settlement Agreement. *Id.* As of the date of filing, Angeion has not reported any received responses from the recipients of the CAFA Notice Packet. *Id.*

#### 2. Class Notice

On February 6, 2023, as ordered by the Court, Snap-on provided Angeion with an electronic file containing 42,872 records of Class Member mailing addresses. *See* Settlement Admin. Decl. ¶ 5. On February 27, 2023, Angeion mailed the Summary Notice to the 42,872 Class Member records. *Id.* ¶ 6. Prior to mailing, Angeion updated the mailing list utilizing the United States Postal Service's ("USPS") National Change of Address database, which provides updated address

7

information for individuals or entities that have moved during the previous four years and filed a change of address with the USPS. *Id.* ¶ 7. Angeion received and processed mailed Notices returned by the USPS as undeliverable. *Id.* Notices returned to Angeion by the USPS with a forwarding address were re-mailed to the new address provided by the USPS. *Id.* Notices returned to Angeion by the USPS without a forwarding address were subjected to address verification searches ("skip traces"), and notices were re-mailed to any updated addresses identified through the skip trace process. *Id.* Finally, Notice was emailed to Class Members for whom Angeion has an email address and to whom the physical Notice was not delivered.

As of April 23, 2023, approximately 2,471 Notices have been returned to Angeion as undeliverable. *Id.* ¶ 8. After receiving 49 updated addresses and performing a "skip trace" on the rest of the returned notices, Angeion discovered 765 total updated addresses and mailed Notice to those on March 28, 2023. *Id.* On April 7, 2023, Angeion emailed Notice to 287 Class Members for whom it had an email address but no updated physical address. *Id.* In sum, Angeion has so far conveyed Notice to a physical or email address for approximately 96.7% of the Class.

In addition to the Direct Mail Notice, on February 27, 2023, Angeion established a Settlement Website and Toll-Free telephone hotline to serve as additional resources for Settlement Class Members. *Id.* ¶ 10. The Settlement Website, [www.SnapOnSecurityIncident.com](www.SnapOnSecurityIncident.com), is dedicated to this matter to provide information to the Settlement Class Members, to answer frequently asked questions and file a claim. *Id.* The website URL was set forth in the Notice. *Id.* at Ex. B. Visitors to the Settlement Website can download copies of the Notice and other case-related documents. *Id.* ¶ 10 The toll-free telephone hotline, 1-866-516-6668, was established and is maintained for potential Settlement Class Members to call and obtain information about the Settlement, request a Notice, and/or seek assistance from a live operator during regular business hours. *Id.* ¶ 13. The telephone hotline became operational

on January 19, 2023, and is accessible 24 hours per day, 7 days per week. *Id.* As of April 24, 2023, the toll-free number has received approximately 306 calls, totaling approximately 1,616 minutes. *Id.* ¶ 14.

### 3. Claims, Exclusions, and Objections

Settlement Class Members will have until May 28, 2023 to file a claim. Preliminary Approval Order ¶ 37. The deadline for Class Members to opt-out or object to the settlement was April 13, 2023. *Id.* This provided Class Members sufficient notice of, and time to exercise, their rights to object or exclude. *Id.* ¶ 17.

At the close of the deadline, Angeion had received thirty (30) timely requests for exclusion from the Settlement. *See* Settlement Admin. Decl. ¶ 18. Angeion has received zero (0) objections to the Settlement. *Id.* ¶ 19. As of April 24, 2023, Angeion has received approximately 727 Claim Form submissions. *Id.* ¶ 17. As Class Members will be able to submit claims through May 28, 2023, more people are expected to submit claims. *Id.* ¶ 16.

### E. Claims Processing and Payment

Class Members have until May 28, 2023 to submit a claim for Lost Time and/or Out-of-Pocket Losses reimbursement. Preliminary Approval Order ¶ 37. The Settlement Administrator is responsible for reviewing, determining the validity of, and processing all claims submitted by Settlement Class Members. S.A. ¶ 38; Preliminary Approval Order ¶ 26. After the Settlement is approved and the time for any appeal has passed, the Settlement Claims Administrator will also be responsible for processing and transmitting Settlement Class Member payments and providing enrollment codes for those Class Members who made a claim for benefits. S.A. ¶ 42; Preliminary Approval Order ¶ 28.

### F. Release

The release in this case is tailored to the claims or causes of action based on, relating to, concerning, or arising out of the Security Incident. S.A. ¶ 70. Settlement Class Members who do not

exclude themselves from the Settlement Agreement will release claims against Snap-on relating to the Incident. *See id.*

## IV.    LEGAL STANDARD

Federal Courts strongly encourage settlements, particularly in class actions and other complex matters where inherent costs, delays, and risks of continued litigation might otherwise outweigh any potential benefit the individual plaintiff—or the class—could hope to obtain. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.").

Similarly, the Court may approve of the settlement of a Federal Rules of Civil Procedure Rule 23 proceeding if: (1) the individual class members are afforded a new opportunity to request exclusion from the settlement; (2) a hearing has been conducted; and (3) the court finds that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e).

In making this determination, the court "must weigh the probabilities of victory or defeat as indicated by the legal or factual situation presented and determine whether the compromise, taken as a whole, is in the best interests" of the class. *United Founders Life Ins. Co. v. Consumers Nat'l Life Ins. Co.*, 447 F.2d 647, 655 (7th Cir. 1971) (internal quotations omitted). The Seventh Circuit traditionally considers other factors when determining whether a proposed class action settlement is fair, adequate, and reasonable, such as: (a) the strength of the plaintiff's case, weighed against the settlement offer; (b) the complexity, length, and expense of further litigation; (c) the presence or absence of collusion between the parties; (d) the opinion of competent counsel; (e) the reaction of class members to the proposal; and (f) the stage of proceedings and discovery completed. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014).

The Seventh Circuit factors and the text of the Federal Rules are not two separate standards; rather, they "overlap." *Parker v. Villa of Greenfield LLC*, No. 20-cv-1696-pp, 2022 U.S. Dist. LEXIS

200285, at *3 (E.D. Wis. Nov. 3, 2022).[2] In weighing these factors, a district court should "recognize[] that the first factor, the relative strength of plaintiffs' case on the merits as compared to what the defendants offer by way of settlement, is the most important consideration." *Isby*, 75 F.3d at 1199. The Seventh Circuit has explained that district courts should "consider the facts in the light most favorable to the settlement." *Id.* at 1198-99 (internal quotations and citation omitted). Further, "[t]he essence of settlement is compromise . . . [t]hus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution *after* trial." *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985), cert. denied, 478 U.S. 1004 (1986) (emphasis in the original). Indeed, a district court should not reject a settlement "solely because [the settlement] does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200.

## V.     ARGUMENT

The agreement reached by the Parties meets the "overlapping" standards of the Seventh Circuit and Rule 23. Notice has been properly provided, no objections have been raised, and the relief contemplated in the Settlement is fair and adequate.

### A.     The Settlement Administrator Provided Notice Pursuant to this Court's Preliminary Approval Order and Satisfied Due Process as Well as Rule 23.

To satisfy due process, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Thus, Rule 23(e) requires

---

[2] Congress amended Rule 23 in 2018 to add a list of concerns that courts should consider when deciding whether to approve a class action settlement. Fed. R. Civ. P. 23(e)(2), Advisory Committee Note to 2018 Amendment; *see Id.* R. 23(e)(2)(A)-(D). But these factors were not intended to "displace" any of the tests devised by the courts of appeals. Fed. R. Civ. P. 23(e)(2), Advisory Committee Note to 2018 Amendmen. Courts within the Seventh Circuit continue to apply the Seventh Circuit factors, albeit with a "focus" on the "core concerns" expressed in the amended Rule. *See In re Tiktok, Inc., Consumer Priv. Litig.*, No. MDL No. 2948, 2022 U.S. Dist. LEXIS 134177, at *54 n.23 (N.D. Ill. July 28, 2022) (quoting Fed. R. Civ. P. 23(e)(2), Advisory Committee Note to 2018 Amendment).

notice that is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the [settlement proposed] and afford them an opportunity to present their objections." *Towers v. City of Chicago*, 173 F.3d 619, 628 (7th Cir. 1999). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). However, notice need not be perfect. "In any class settlement, some class members may not receive timely notice; 'the function of the filing deadline is to put a time limit on the claims procedure' to achieve          finality          and          certainty          in class action settlements.'" *Farnham v. Caribou Coffee Co.*, No. 16-cv-295-wmc, 2017 U.S. Dist. LEXIS 214929, at *17 (W.D. Wis. Dec. 15, 2017) (quoting *In re VMS Sec. Litig.*, No. 89 C 9448, 1992 U.S. Dist. LEXIS 12141, 1992 WL 203832, at *5 (N.D. Ill. Aug. 11, 1992)). "Due process does not require more." *Id.*

Here, notice was done pursuant to best practices. A summary notice was mailed to class members along with the claim form and a prepaid business reply mailer that enabled class members to seamlessly send back the completed claim form. *See Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, at 29, Federal Trade Commission (Sept. 2019), available at https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlementcampaigns/class_action_fairness_report_0.pd (recommending the use of notice packets of this kind) finding there are substantially higher claims rates for notice campaigns that use notice packets). The Long Form Notice contained a summary of key terms of the Settlement Agreement and directed Settlement Class Members to the Settlement Website and a toll-free telephone hotline where they could obtain additional information, and the Summary Notice likewise directed people to the website and the hotline. *See* Settlement Admin. Decl. Exs. B-C. On February 27, 2023, the Settlement Administrator established a website, www.SnapOnSecurityIncident.com ("Settlement Website"), to answer frequently asked questions and allow Class Members to file a claim. *See*

Settlement Admin. Decl. ¶ 10. Visitors to the Settlement Website can download copies of the Long Form Notice, Spanish translations of the Long Form Notice, the Claim Form, and other case-related documents. *Id.* Class Members may also file a Claim on the website through an online portal. *Id* ¶ 10. As of April 24, 2023, the Settlement Website has had approximately 11,608 page views, with likely more as time goes on. *Id* ¶ 12.

Class members may contact the Settlement Administrator in other ways. As noted above, on February 27, 2023, Angeion established a toll-free telephone hotline, 1-866-516-6668, for potential Settlement Class Members to call and obtain information about the Settlement, request a Notice, and/or seek assistance from a live operator during regular business hours. *Id.* ¶ 13. Out of regular business hours, the telephone line uses an interactive voice response ("IVR") system to provide Class Members with responses to frequently asked questions and information about filing a claim and important deadline dates. *Id.* It is available twenty-four hours a day, seven days a week. *Id.* The Settlement Administrator has also set up a dedicated email address, info@snaponsecurityincident.com, to answer questions about the Settlement. *Id.* ¶ 10.

Moreover, the Settlement Administrator—with the assistance of the Parties—has taken extraordinary measures to ensure individual Notice reached as many of the Settlement Class Members as possible. As noted above in Section III.D, Angeion has so far conveyed individual Notice to a physical or email address for approximately 96.7% of the Class, with more to come.

Accordingly, the Notice program should be approved as meeting the requirements of due process and Rule 23.

### B. The Settlement Terms are Fair, Adequate, and Reasonable, and Meet the Requirements of Federal Rule 23(e)(2)

Federal Rule 23(e)(2) requires certain factors to be considered by a court before granting final approval of a class action settlement: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the

class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)–(D). In determining whether the relief provided is adequate, courts must consider: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

1.  <u>Class Representatives and Class Counsel have adequately represented the Class.</u>

The adequacy requirement of Rule 23(e)(2)(A) is satisfied when "(a) the plaintiff's attorney [is] qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to the class." *Susman v. Lincoln American Corp.*, 561 F.2d 86, 90 (7th Cir. 1977). At the final settlement stage, courts routinely find this element satisfied when preliminarily approved class counsel and class representatives have performed their duties and no new conflicts have been found. *See, e.g.,* B*ynum v. Cmty. Loans of Am., Inc.,* No. 20-cv-1564-pp, 2022 U.S. Dist. LEXIS 188785, at *4 (E.D. Wis. Oct. 17, 2022); *Parker v. Villa of Greenfield LLC*, No. 20-cv-1696-pp, 2022 U.S. Dist. LEXIS 200285, at *3 (E.D. Wis. Nov. 3, 2022).

Plaintiff Carmack is a suitable representative. Preliminary Approval Order ¶¶ 12-13. He is a member of the Class who alleges the same injuries and seeks, like other Class Members, both reimbursement for costs incurred due to the Security Incident and protection from potential negative consequences of the Security Incident. *Id.* And he has already represented the Class by providing information for pleadings and settlement discussions, informal discovery responses, engaged with Class Counsel regarding the litigation, participated in the settlement negotiations via email, and approved the proposed Settlement terms. Migliaccio Decl. ¶ 32. As such, his interests and the interests of his counsel are not inconsistent with those of other Class Members.

Further, counsel for Plaintiff have decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the Class. *See id.* ¶ 4; Preliminary Approval Order ¶ 14. The Settlement was only reached after Class Counsel had completed an extensive investigation of the case and Snap-on had provided informal discovery related to the merits of Plaintiff's claims. Migliaccio Decl. ¶¶ 7-9. The informal exchange of information, combined with Plaintiff's and Class Counsel's research, allowed Class Counsel to fully evaluate the strengths and weaknesses of Plaintiff's case and to conduct informed settlement negotiations. *See id* ¶¶ 13, 17.

Finally, no new conflicts have arisen since preliminary certification. Accordingly, the Settlement meets the requirements of Rule 23(e)(2)(A).

### 2. The proposal was negotiated at arm's length.

Courts recognize that arm's-length negotiations conducted by competent counsel are *prima facie* evidence of fair settlements. "A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 *McLaughlin on Class Actions* § 6:7 (8th ed. 2011). Indeed, settlements are regularly granted approval where a court finds that they are the product of informed, non-collusive, arm's-length negotiations. *See Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chicago*, 834 F.2d 677, 681-82 (7th Cir. 1987); *Bynum*, 2022 U.S. Dist. LEXIS 188785, at *4; *Parker v. Villa of Greenfield LLC*, No. 20-cv-1696-pp, 2022 U.S. Dist. LEXIS 200285, at *3 (E.D. Wis. Nov. 3, 2022).

The Settlement here is the result of extensive arm's-length negotiations. Preliminary Approval Order ¶ 4. The Agreement was reached with the assistance of respected mediator Bruce Friedman and was only finalized after a full-day mediation and weeks of post-mediation negotiations. *See* Migliaccio Decl. ¶¶ 12-15. Class Counsel and Defense Counsel, both highly experienced in data breach class actions, had a comprehensive understanding of the strengths and weaknesses of each party's claims

and defenses. Migliaccio Decl. ¶¶ 17, 18. They exchanged emails and held many direct telephone conferences over a period of months, in addition to formal mediation. *Id.*

Further, a proposed settlement is presumed to be fair and reasonable when it is the result of arm's length negotiations. *Mars Steel Corp.*, 834 F.2d at 681-82, *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 325 (7th Cir. 1980); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 375-76 (D.D.C. 2002) ("A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations'") (internal quotations and citation omitted)); *In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d 139, 145-46 (E.D.N.Y. 2000) (in determining fairness, the "consideration focuses on the negotiating process by which the settlement was reached") (internal quotation omitted)). This presumption is applicable here.

### 3. The relief provided for the Class is adequate.

Fed. R. Civ. P. 23(e)(2)(C) requires examination of the relief provided by the Settlement. The Settlement negotiated on behalf of the class provides for significant relief. *See* Preliminary Approval Order ¶ 8. The Settlement, if approved, will allow Settlement Class Members who have not suffered fraud or identity theft to make a claim for up to $750 per person in ordinary expenses and time reimbursements. S.A. ¶ 36. Class Members will be reimbursed for their time at the actual hourly rate they received while working at Snap-on, but in no case lower than $15 per hour or higher than $25 per hour. *Id.* Class Members who have suffered documented fraud will be able to recover up to $2,500. *Id.* Finally, Snap-on will offer all Class members an additional year of three-bureau credit monitoring, in addition to the two years already offered, for a total of three years. *Id.*

The relief provided compares favorably with other settlements finally approved in other data breach cases. *See, e.g., Mowery v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SPC (E.D. Mo. Dec. 22, 2020) (providing up to $280 in value to Settlement Class Members in the form of: reimbursement up

to $180 of out of pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the form of data security enhancements); *Baksh v. IvyRehab Network, Inc.*, No. 7:20-CV-01845 (S.D.N.Y. Jan. 27, 2021) (providing up to $75 per class member out of pocket expenses incurred related to the data breach and $20 reimbursement for lost time, with payments capped at $75,000 in aggregate; credit monitoring for claimants; and equitable relief in the form of data security enhancement); *Bailey v. Grays Harbor Cnty. Pub. Hosp. Dist.*, No. 20-2-00217-14 (Wash. Super. Ct. Grays Harbor Cnty. May 27, 2020) (providing up to $210 per class member for reimbursement of ordinary expenses and time spent dealing with the data breach, up to $2500 for extraordinary losses, and equitable relief in the form of security enhancements valued at no less than $480,000).

<blockquote>a.     *The costs, risks, and delay of trial and appeal weigh in favor of approval.*</blockquote>

The relief provided for by the Settlement Agreement is significant, especially in light of the costs, risks, and delay of further litigation. The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiff strongly believes in the merits of his case, he also understands that Snap-on will assert a number of potentially case-dispositive defenses. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 2010 U.S. Dist. LEXIS 71996, at *2-4 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g.,* I*n re Hannaford Bros. Co. Customer Data Sec. Breach Litig.,* 293 F.R.D. 21 (D. Me. 2013). Because the "legal issues involved [in data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other

issues." *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522 (PAM/JJK), 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015).

As explained in more detail in Section V.C.1, *infra*, while Plaintiff is confident in the merits of his claims, he is not certain to overcome a motion to dismiss or motion for summary judgement, to secure certification of the class, or to win at trial. Through the Settlement, Plaintiff and Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

> b.    *The effectiveness of the proposed method of distributing relief to the Class, including the method of processing Class Member claims, is objective, efficient, and fair.*

All Class Members have until May 28, 2023 to submit a claim for Lost Time and Out of Pocket expenses reimbursement. Preliminary Approval Order ¶ 37. They have already been doing so, quickly and easily, both online and by mail. Settlement. Admin. ¶ 17. The Settlement Administrator is responsible for reviewing, determining the validity of, and processing all claims submitted by Settlement Class Members. Preliminary Approval Order ¶ 26. In the event the Settlement is finally approved, the Settlement Claims Administrator is directed to effectuate the distribution of Settlement Benefits. *Id.* ¶ 28.

As such, the Settlement provides for effective processing and distribution of relief and should be approved.

> c.    *The attorneys' fees, costs, and Service Awards that Plaintiff requested are fair and reasonable.*

Plaintiff will seek, and Snap-on will not object to, an award of reasonable attorneys' fees to Plaintiff's counsel not to exceed $225,000, subject to Court approval. *See* S.A. ¶ 76. Snap-on has also agreed to pay Plaintiff a service award in the amount of $3,000 for his services rendered on behalf of the Settlement Class, subject to Court approval. *See* S.A. ¶ 74.

As explained in more detail in Section V.D, *infra*, these attorneys' fees and service award are fair and reasonable. The attorneys' fees sought are well less than a third of the total value provided

to the Class, even though amounts of more than a third are routinely awarded. *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("[In a class action, t]he typical contingent fee is between 33 and 40 percent"). Plaintiff's requested service award is less than the amount that can be sought by any one Class Member.

> d.     *No additional agreements are required to be identified under Rule 23(e)(3).*

There are no additional agreements that require identification and/or examination under Rule 23(e)(3).

> 4.     The Settlement treats Class Members equitably relative to each other.

Under the terms of the Settlement, the Class Members will be treated equitably to each other. Each Class Member will have until May 28, 2023, to make a claim from the Settlement fund based on the amount of expenses they have incurred and time they have spent dealing with any fall-out from the Data Incident. Moreover, Class Members will automatically be offered, included with the Notice, codes for an additional year of three-bureau credit monitoring and identity theft protection. As such, each Class Member has an equal opportunity to benefit from the Settlement.

**C.     The Settlement Also Warrants Approval in Light of the Factors Traditionally Considered by Seventh Circuit Courts.**

As noted above, Seventh Circuit courts consider the following six factors in class certification:

> (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.

*Wong*, 773 F.3d 859 at 863 (citation omitted).

The Seventh Circuit has explained that district courts should "consider the facts in the light most favorable to the settlement." *Id.* at 1198-99 (internal quotations and citation omitted).

19

Further, "[t]he essence of settlement is compromise . . . [t]hus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution *after* trial." *E.E.O.C.*, 768 F.2d at 889 (emphasis in the original).

1.   Factors (1) & (2): Continued litigation would be costly and risky for the Class

On motions for settlement approval, "the first factor, the relative strength of plaintiffs' case on the merits as compared to what the defendants offer by way of settlement, is the most important consideration." *Isby*, 75 F.3d at 1199. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Est. of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985).

Although Plaintiff is confident in the merits of his claim, the developing nature of data breach law introduces significant risk at every stage of litigation. Here, Defendant disputes Plaintiffs' allegations and denies that it is liable for any harm Plaintiff suffered from the cyberattack. It has indicated that it will vigorously defend the case, including by filing an extensive motion to dismiss. In this unsettled area of law, plaintiffs' injuries are often controversial, such as the risk of future identity theft and loss of control of sensitive information. If Plaintiff were to defeat a motion to dismiss, he would still face significant pre-trial risks in obtaining class certification and defeating a motion for summary judgement. Finally, although Plaintiff is confident in the merits of his case and has evidence to support his claims, there is no guarantee that the Court or a jury would find his arguments more persuasive during a trial or subsequent appeals.

What is guaranteed is that further litigation would significantly delay recovery. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 582 (N.D. Ill. 2011) ("Absent settlement, Class Members would face the real risk that they would win little or no recovery. What is assured is that any victory would

come only after many months (or years) of hard-fought litigation."). Given that the Parties are seeking settlement at an early stage, if the Settlement is denied, they could potentially face years of further litigation. The cost of delay is particularly acute in data breach cases. The promised relief in the Settlement Agreement includes both credit monitoring services and business practice changes. The sooner Class Members receive these benefits, the better. Without these benefits, Class Members face an increased risk of identity theft or further invasion of privacy. Further litigation may not just delay benefits but cause real harm.

Given the risks Plaintiffs face going forward, the consideration offered in Settlement—both monetary and non-monetary—is well-balanced against the hurdles Plaintiffs will have to overcome to find success later down the road.

2. <u>Factors (3) & (4): The response to the Settlement has been positive, with no objections.</u>

Nearly all Members of the Class have had the opportunity to make an objection. However, none of them have, and only thirty Class Members have requested exclusion. Settlement Admin. Decl. ¶¶ 18-19. As of April 24, 2023, approximately 727 total Claims have been submitted. Settlement Admin. Decl. ¶ 17. In the informed opinion of Class Counsel, this reaction from the Class is overwhelmingly positive. Migliaccio Decl. ¶ 26. Given the total lack of objections, and the fact that claims made appear to outnumber exclusions by an order of magnitude, Seventh Circuit factors 3 and 4 weigh in favor of final approval.

3. <u>Factor (5): The Opinion of Competent Counsel Is That the Settlement Is Fair, Reasonable, and Adequate, and Should Be Approved</u>

Class Counsel has extensive experience in similar Class Actions and is competent to litigate them. Migliaccio Decl. ¶ 2, 23; Preliminary Approval Order ¶ 14. In Class Counsel's learned and experienced opinion, the Settlement is a fair, reasonable, and adequate outcome for the class.

Migliaccio Decl. ¶ 21. Class Counsel's opinion is informed not just by the Settlement itself, but by the risks posed by further litigation, explained further above. *Id.*

> 4. <u>Factor (6): The Stage of the Proceedings and the Amount of Discovery Completed Favors Settlement Now</u>

The Parties have participated in informal confirmatory discovery. *Id.* ¶ 13, 17, 24. Plaintiffs requested, received, and reviewed information from Snap-on in connection with mediation and settlement negotiations. Plaintiffs have expended significant efforts researching and preparing their opposition to Defendant's motion and continued their factual investigation of the Security Incident in anticipation of discovery. *Id.* ¶ 17; *Schulte*, 805 F. Supp. at 587-89. The Settlement comes at a critical juncture in the litigation, prior to the motion to dismiss, before litigation risks, efforts, and costs would truly begin to increase. Thus, the final Seventh Circuit factor weighs in favor of approving the Settlement.

**D. Class Counsel's Fee and Expense Request of $225,000 is Reasonable and Should be Approved**

> 1. <u>The Court Should Approve Reimbursement of $8,827.50 in Expenses</u>

It is well established that class counsel are entitled to the reimbursement of litigation costs and expenses that helped create the common benefit given to the class. *See, e.g., Beesley v. Int'l Paper Co.*, No. 06- 703, 2014 WL 375432, *3 (S.D. Ill. Jan. 31, 2014) (citing Fed. R. Civ. P. 23; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Seventh Circuit has held that costs and expenses should be awarded based on the types of "expenses private clients in large class actions (auctions and otherwise) pay." *In re Synthroid Mkt. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001) ("*Synthroid I*"); *see also Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1256 (N.D. Ill. 1993) (noting that courts regularly award reimbursement of those expenses that are reasonable and necessarily incurred in the course of litigation). Here, Class Counsel have incurred $8,827.50 in reimbursable expenses related to (1) court fees; and (2) mediation expenses. *See* Migliaccio Decl. ¶ 37 . These expenses were

necessary to prosecute this case and modest in comparison to both similarly sized lawsuits and the enormous costs that likely would have been incurred if litigation had continued. *Id.* Accordingly, Class Counsel request that the Court approve as reasonable expenses in the amount of $8,827.50.

> 2. The Court Should Approve $216,172.50 in Attorneys' Fees Under the Lodestar Approach

Rule 23 provides that "[i]n a certified class action, the court may award reasonable attorney's fees...that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In the Seventh Circuit, courts determine class action attorneys' fees by "[d]oing their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Synthroid I*, 264 F.3d at 718 (collecting cases). Courts have discretion to determine the "market rate" based on either a lodestar or percent-of-benefit method. *See Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 204 (N.D. Ill. May 30, 2018). *See also Williams v. Rohm & Haas Pension Plan*, 658 F.3d at 629, 636 (7th Cir. 2011); *Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014) ("[T]he choice of methods is discretionary ... in our circuit, it is legally correct for a district court to choose either."). Because this Settlement Agreement is a "claims made" settlement, the lodestar method is an appropriate approach. *See Daluge v. Cont'l Cas. Co.*, No. 15-CV-297-WMC, 2018 WL 6040091, at *4 (W.D. Wis. Oct. 25, 2018). ("Here, given that there is no common fund, the court opts to review plaintiffs' request under the lodestar method."); *see also* 5 Newberg on Class Actions §§ 15:56 & 15.70 (5th ed.) (describing claims-made settlements in the context of fees). The lodestar is "the product of the hours reasonably expended on the case multiplied by a reasonable hourly rate." *Id.* The amount yielded from this calculation does not end the Court's inquiry into the ultimate fee award, however. Once the lodestar amount is calculated, the amount can be adjusted by considering several additional factors. *See Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 742 n.1 (7th Cir. 2003). Here, Plaintiff's counsel's lodestar amount

is $195,877.45 and consideration of additional factors confirms the propriety of a modest multiplier of approximately 1.10, to support Plaintiff's attorney fee request of $216,172.50. Hawks Quindel, S.C. has also expended hours for a lodestar of $2,300, also included in the attorney fee request of $216,172.50.

*First*, Plaintiff's lodestar calculation is correct and reasonable. The hours logged are reflected in the time entries of Class Counsel kept in their ordinary course of business. *See* Migliaccio Decl. ¶¶ 36-37. The hours were reasonably expended to investigate the case, draft a comprehensive class action complaint, meet and confer with defense counsel, prepare a robust mediation statement, mediate with Defendant with the assistance of a well-experienced mediator, draft and negotiate the settlement agreement, oversee the settlement administration process, and marshal the case through settlement approval. *See id.* ¶ 34.

The attorney rates used are the current, standard rates used by Migliaccio & Rathod LLP in class action cases across the country, including consumer and data privacy class actions. *See* Migliaccio Decl. ¶ 40. Class Counsel's rates have been found to be reasonable by several federal district courts including in states geographically proximate to Wisconsin. *See, e.g., Fath v. Am. Honda Motor Co.*, No. 18-CV-1549 (NEB/LIB), 2020 U.S. Dist. LEXIS 252264, at *11 (D. Minn. Sep. 11, 2020) (approving M&R's rates as reasonable); *Whitfield v. Trinity Rest. Grp., LLC*, No. 18-10973, 2019 U.S. Dist. LEXIS 182055 (E.D. Mich. Oct. 3, 2019) (same).[3] Class Counsel's rates compare favorably with rates approved by this Court and courts within the Seventh *Circuit. See Spano v. Boeing Co.*, No. 06-CV-743-NJR-DGW, 2016 WL 3791123, at *3 (S.D. Ill. Mar. 31, 2016) (approving these hourly rates: attorneys with at least 25 years of experience, $998 per hour; for attorneys with 15–24 years of experience, $850 per hour; for attorneys with 5–14 years of experience, $612 per hour; for

---

[3] Other courts across the country have also explicitly approved Class Counsel's rates as reasonable in consumer class action cases. *See, e.g., Carlotti v. Asus Comput. Int'l*, No. 18-cv-03369-DMR, 2020 U.S. Dist. LEXIS 108917, at *17 (N.D. Cal. June 22, 2020).

attorneys with 2–4 years of experience, $460 per hour; for paralegals and law clerks, $309 per hour; for legal assistants, $190 per hour*)*; *Fox v. Iowa Health Sys.*, No. 3:18-CV-00327-JDP, 2021 WL 826741, at *6 (W.D. Wis. Mar. 4, 2021) (awarding $1,575,000 in attorneys' fees and costs, at hourly rates from $815-$865 per hour for partners, $550-$625 for senior associates, $415-$500 for associates, and $215-$350 for paralegals); *Powers v. Filters Fast, LLC*, No. 20-cv-982-JDP (Dkt. Nos. 71-1, 84) (W.D. Wis. July 22, 2022) (approving attorneys' fee and expense request of $320,000 in which attorneys' lodestar was calculated using rates up to $919 for partners); *Daluge*, 2018 WL 6040091, at *3–4 (approving rates of $795 for partners and $225 for paralegal); *Chesemore v. All. Holdings, Inc.*, No. 09-cv-413-wmc, 2014 WL 4415919, at *6 (W.D. Wis. Sept. 4, 2014) (from "$395 (for lower-level associates) to $895 (for highest-level partners)").[4] Accordingly, both the hours expended and the rates used are reasonable.

 *Second*, consideration of the additional fee factors support awarding a multiplier on Class Counsel's lodestar. *See Mathur*, 317 F.3d at 742 n.1. Class Counsel submit that four of these factors in particular warrant a multiplier: the contingent nature of the fee; the time and labor required; the novelty and difficulty of the questions; and awards in similar cases.

 **The contingent nature of the fee.** "Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (citing *Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986)). Thus, the risk of non-payment is a key

---

[4] "'[The Seventh Circuit has recognized that 'if an out-of-town attorney has a higher hourly rate than local practitioners, district courts should defer to the out-of-town attorney's rate when calculating the lodestar amount.'" *Doxtator v. O'Brien*, No. 19-C-137, 2021 U.S. Dist. LEXIS 94898, at *3 (E.D. Wis. May 19, 2021)(quoting *Mathur*, 317 F.3d at 743-44. Nevertheless, it is notable that even in non-data breach cases, similar or higher rates have also been awarded by this Court and the Western District of Wisconsin in different contexts. *See, e.g.,* *Petitt v. Saul,* No. 18-cv-504-wmc, 2020 U.S. Dist. LEXIS 258486, at *2 (W.D. Wis. June 30, 2020) (finding that "$1,000 per hour is reasonable" given the plaintiff's counsel's extensive work on social security benefits case and the significant award obtained); *Doxtator*, No. 19-C-137, 2021 U.S. Dist. LEXIS 94898, at *3 (finding hourly rates of between $350-$770 to be reasonable in a civil rights case).

consideration in assessing the reasonableness of a requested fee and must be incorporated into any ultimate fee award. *See Sutton v. Bernard*, 504 F.3d 688, 694 (7th Cir. 2007) (finding abuse of discretion when district court did not account for the risk of loss on basis that "class actions rarely go to trial and that they all settle[,]" noting that "there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit[;] ... [b]ecause the district court failed to provide for the risk of loss, the possibility exists that Counsel, whose only source of a fee was a contingent one, was undercompensated"). Here, Class Counsel has litigated this case on a pure contingency basis, advancing litigation expenses, receiving no payment to-date for work performed, and bearing 100 percent of the risk if Plaintiff did not prevail. The contingent nature of the fee merits a multiplier. *See Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991) (noting that "[a risk] multiplier is, within the court's discretion, appropriate when counsel assume a risk of non-payment in taking a suit" and "[m]ultipliers anywhere between one and four have been approved")); *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776 F.2d 646, 660 (7th Cir. 1985) ("[D]istrict courts may add a bonus to the lodestar to compensate for the contingent nature of success.").

 **The time and labor required.** "A surgeon who skillfully performs an appendectomy in seven minutes is entitled to no smaller fee than one who takes an hour; many a patient would think he is entitled to more." *Purdy v. Sec. Sav. & Loan Asso.*, 727 F. Supp. 1266, 1278-79 (E.D. Wis. 1989) (internal quotation and citation omitted) (commending counsel for settling the case within 15 months and awarding a 2.0 multiplier on lodestar). Indeed, "a prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of justice." *Rates Tech., Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 172 (2d Cir. 2012) (internal citations and quotations omitted). Here, Plaintiff secured a favorable classwide settlement and presented it to the court for preliminary approval within eight months of the filing of the Complaint. As the next section will

demonstrate, this outcome was secured *not* because the issues were straightforward, but rather, because Class Counsel marshaled their considerable experience in class action and privacy litigation to efficiently achieve a just result. Courts should encourage efficient advocacy of this kind and can do so by awarding a multiplier. *See Purdy*, 727 F. Supp. at 1279 (commending counsel for settling the case within 15 months and awarding a 2.0 multiplier on lodestar).

***The novelty and difficulty of the questions.*** "Data breach cases are particularly risky, expensive, and complex." *Yvonne Mart Fox v. Iowa Health Sys.*, No. 3:18-cv-00327-JDP, 2021 U.S. Dist. LEXIS 40640, at *13-14 (W.D. Wis. Mar. 4, 2021) (internal quotation, citation, ellipsis omitted). Such cases are endlessly "evolving" with "no guarantee of the ultimate result" and require substantial documentary and expert evidence to prove. *See id.* Here, Class Counsel conducted a thorough factual investigation and constructed a well-pled Complaint without the benefit of any discovery. They faced a minefield of possible defenses to class certification and the merits, including those that concern proving classwide injury and causation, but nevertheless secured strong classwide relief. This, too, merits a multiplier.

***Awards in similar cases.*** The fee sought here is appreciably lower than that awarded in similar data breach cases in district courts in this state and circuit and which secured similar, if not inferior, categories of relief such as reimbursement for out of pocket expenses and additional credit monitoring. *See, e.g., Yvonne*, 2021 U.S. Dist. LEXIS 40640, at *18 (awarding $1,575,000 in fees and expenses); *Perdue v. Hy-Vee, Inc.*, 550 F. Supp. 3d 572 (C.D. Ill. 2021) (awarding fees and expenses of $739,000); *Powers v. Filters Fast, LLC*, No. 20-cv-982-JDP (Dkt. No. 84) (W.D. Wis. July 22, 2022) (awarding attorneys' fee and expense request of $320,000). Each case also had a lower claims rate than the settlement here and that is even before the claims period has ended here. *See* Migliaccio Decl. ¶ 38. That Class Counsel obtained similar relief and a higher claims rate than similar cases

warrants an upward adjustment on its lodestar, particularly when doing so will still result in a fee award that is lower than those same comparators.

3.   <u>The Court Should Approve the Service Award to Plaintiff Carmack in the Amount of $3,000</u>

Class Counsel requests that the Court grant a Service Award to Plaintiff Carmack in the amount of $3,000 for his efforts on behalf of the Class. Service awards compensating named plaintiffs for work done on behalf of the class are routinely awarded. Such awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become named representatives."). Without plaintiffs serving as Class Representative, the Class would not have been able to recover anything. *See w* ("[E]ach … plaintiff has provided invaluable assistance and demonstrated an ongoing commitment to protecting the interests of class members. The requested incentive award for each named plaintiff recognizes this commitment and the benefits secured for other class members and is thus reasonable under the circumstances of this case."). Plaintiff Carmack spent considerable time pursuing Class Members' claims. In addition to lending his name to this matter, and thus subjecting himself to public attention, Plaintiff was actively engaged in this Action. He (1) maintained contact with Class Counsel; (2) participated in client interviews; (3) provided relevant documents; (4) assisted in the investigation of the case; (5) participated in the mediation; (6) remained available for consultation throughout settlement negotiations; (7) reviewed relevant pleadings and the settlement agreement, and (8) answered Class Counsel's many questions. Migliaccio Decl. ¶ 42. Their dedication to this Action was notable, particularly given the relatively modest size of their personal financial stakes in this case.

28

Moreover, the amount requested here, $3,000, is similar to the service awards approved by the Court in other data breach cases in federal district court cases in this state. *See, e.g., Fox*, 3:18-cv-00327-JDP, 2021 U.S. Dist. LEXIS 40640, at *19 (awarding $2,500 to each of four class representatives). It is also substantially less than many other service awards approved by courts in this Circuit. *See, e.g.,* K*olinek v. Walgreen Co.,* 311 F.R.D. 483, 502 (N.D. Ill. 2015) ("a $5,000 reward is justified based on Kolinek's role working with class counsel, approving the settlement agreement and fee application, and volunteering to play an active role if the parties continued litigating through trial"); *Cook*, 142 F.3d at 1016 (affirming $25,000 service award)*; Heekin v. Anthem, Inc.*, No. 1:05-cv-01908-TWP-TAB, 2012 U.S. Dist. LEXIS 165464, at *5 (S.D. Ind. Nov. 20, 2012) (approving $25,000 incentive award to lead class plaintiff over objection).

## VI.    CONCLUSION

Plaintiff has negotiated a fair, adequate, and reasonable Settlement that will provide Class Members with both significant monetary and equitable relief. For the reasons discussed above, and for those described in Plaintiff's Memorandum in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement (Doc. 25), Plaintiff respectfully requests this Court enter the proposed Final Approval Order filed herewith, finally certify the Settlement Class, appoint Class Counsel and Plaintiff as representative for the Class, and award reasonable Attorneys' Fees and Service Award.

Dated: April 27, 2023                                           Respectfully submitted,

                                                               *By:  s/ Larry A. Johnson*
                                                               Larry A. Johnson,
                                                               **HAWKS QUINDEL, S.C.**
                                                               ljohnson@hq-law.com
                                                               5150 N. Port Washington Road, Ste. 210
                                                               Milwaukee, Wisconsin 53217

Nicholas A. Migliaccio (admitted *pro hac vice*)
Jason S. Rathod (admitted *pro hac vice*)
**MIGLIACCIO & RATHOD, LLP**
412 H Street, NE, Suite 302
Washington, DC 20002
Telephone: 202-470-520
Facsimile: 202-800-2730
Email: nmigliaccio@classlawdc.com

*Counsel for Plaintiff and Settlement Class Counsel*